897 F.2d 1549
 In the Matter of the SEARCH OF the PREMISES KNOWN AS 6455
SOUTH YOSEMITE, ENGLEWOOD, COLORADO.
BLINDER, ROBINSON & CO., INC., and Meyer Blinder, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 89-1103.
 United States Court of Appeals,
Tenth Circuit.
 March 12, 1990.
 
 Nathan Lewin (Randall J. Turk, Cynthia A. Thomas of Miller, Cassidy, Larroca & Lewin, Washington, D.C. and Charles F. Brega of Brega & Winters, P.C., Denver, Colo., were with him on the brief), for appellants.
 Sara Criscitelli, Atty., Dept. of Justice, Washington, D.C. (William A. Maddox, U.S. Atty., D. of Nev., Michael J. Norton, U.S. Atty., for D. of Colo., Howard J. Zlotnick, Asst. U.S. Atty., for D. of Nev., Kenneth R. Fimberg, Asst. U.S. Atty., for D. of Colo., and Christopher L. Varner, Dept. of Justice, Washington, D.C., were on the brief), for appellee.
 Before LOGAN, BARRETT, and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 Pursuant to Federal Rule of Criminal Procedure 41(e), appellants Blinder, Robinson & Company, Inc. ("Blinder, Robinson & Company") and Meyer Blinder filed an action for the return of property in which they alleged that various business records had been seized illegally by federal agents. The district court denied their request for relief. We dismiss the appeal as to appellant Meyer Blinder for lack of jurisdiction. We remand the case to the district court for further proceedings to determine whether appellant Blinder, Robinson & Company is able to satisfy the equitable requirements for a pre-indictment action under Rule 41(e).
 
 BACKGROUND
 
 2
 Blinder, Robinson & Company is a nationwide broker and dealer of new issues of low-priced stocks (commonly known as "penny-stocks"). Meyer Blinder is the founder and president of Blinder, Robinson & Company. Both the corporate headquarters and the Englewood branch office of Blinder, Robinson & Company are located in the Blinder, Robinson & Company Building in Englewood, Colorado.
 
 
 3
 On September 13, 1988, two Internal Revenue Service Agents visited Blinder, Robinson & Company's offices in Englewood. Blinder, Robinson & Company executives allowed one of the agents, Robert H. Salisbury, to examine microfiche pages of a customer account file and a corresponding cash disbursement report. The agents left after a short while without taking any documents.
 
 
 4
 On November 16, 1988, Agent Salisbury submitted an affidavit to a Magistrate for the United States District Court for the District of Colorado as part of an application for a warrant to search the Blinder, Robinson & Company offices in Englewood. In that affidavit, Agent Salisbury summarized information he had learned as part of an ongoing criminal investigation of possible securities violations.
 
 
 5
 Agent Salisbury alleged that Blinder, Robinson & Company and Meyer Blinder had participated in the violation of federal securities laws. Agent Salisbury further alleged that while he was at the Blinder, Robinson & Company offices in September, he had observed in the microfiche account records of Blinder, Robinson & Company an account maintained in the name of one of the persons or companies allegedly involved in the violation of federal securities laws. Agent Salisbury also alleged that, in conjunction with the Securities and Exchange Commission, he was then involved in an ongoing criminal investigation of Blinder, Robinson & Company and Meyer Blinder.
 
 
 6
 On the basis of Agent Salisbury's affidavit, the Magistrate issued a warrant to search Blinder, Robinson & Company's offices located at 6455 South Yosemite, Englewood, Colorado. The warrant authorized a search on or before November 25, 1988 of the entire ten-story building except for the third floor (which was leased to a medical services organization not affiliated with Blinder, Robinson & Company). The warrant authorized the agents to seize various types of transaction and sales records, as well as correspondence and memoranda related to a list of fifteen corporations and fifty-three nominees (persons or companies who allegedly were involved in the violation of the federal securities laws).[1]
 
 
 7
 On the morning of Saturday, November 19, 1988, twenty-six I.R.S. and S.E.C. agents accompanied by local police officers arrived at the Blinder, Robinson & Company building. After removing the employees from the building and securing the entrances, the agents began to search the entire building systematically. Over the course of the next four days, the government agents seized thousands of documents.
 
 
 8
 Counsel for Blinder, Robinson & Company arrived at the building soon after the search began and negotiated an agreement protecting the confidentiality of documents containing privileged attorney-client information. III R. at 207, 236. Counsel for Blinder, Robinson & Company also requested that the government agents provide copies of any business records of the company seized by the government. II R. at 69.
 
 
 9
 The government agents removed stock certificates from the company safe, but replaced them after making copies. III R. at 240. Blinder, Robinson & Company employees were permitted to make copies of the customer books and customer complaint files while the government agents supervised. III R. at 243; II R. at 158.
 
 
 10
 Although representatives of Blinder, Robinson & Company requested copies of the due diligence files that were to be seized, that request was denied.[2] II R. at 153. However, Blinder, Robinson & Company employees were able to reconstruct those files in order to comply with the relevant S.E.C. regulations which required that they be maintained. II R. at 160.
 
 
 11
 The government agents told the Blinder, Robinson & Company representatives that they intended to seize the microfiche stock sales records of the company. III R. at 238. The company representatives said that they did not have copies of all of the microfiche records and proposed that the government make copies of the microfiche records. II R. at 75-76. The government agents rejected that suggestion. Id. Blinder, Robinson & Company representatives then suggested that if the agents would not seize the microfiche, the company would have its computer programmer program the company computers to generate records of all sales involving the companies and nominees listed in the warrant. II R. at 75-78, 146-47; III R. at 239, 260. The government agents agreed, and Blinder, Robinson & Company executed two separate computer programs. Id. First, the computer generated a hard copy printout of purchase and sale records relating to the companies listed in the warrant. II R. at 146. Second, a magnetic tape was produced that detailed the transactions related to the companies listed in the warrant by customer account number in such a way as to show whether there was a profit or loss for each completed stock transaction. II R. at 147.
 
 
 12
 Two hours before the search concluded on Tuesday, the fourth day of the search, the Blinder, Robinson & Company employees stopped copying the documents that were being seized and told the government agents that they had copied everything that they needed to copy. III R. at 243-44, 267. Although some original documents were seized that Blinder, Robinson & Company's employees had not made copies of, an agreement was reached between the company and the government to make copies later. III R. at 247. Pursuant to that agreement, a representative of Blinder, Robinson & Company traveled to Las Vegas, Nevada where the materials were stored. II R. at 163-66. The representative made copies of all of the seized documents except for duplicate documents, those that had previously been returned, and the computer materials that apparently could be duplicated by Blinder, Robinson & Company using its computer system. II R. at 146-47, 159, 165-66. The government and Blinder, Robinson & Company shared the cost of that copying. II R. at 163; III R. at 247.
 
 
 13
 Although the government agents evidently searched through a few personal photographs, magazines and an envelope containing personal property in the offices of Blinder, Robinson & Company's employees, appellants make no claim that those items are in the present possession of the government. II R. at 174-75. One employee testified that she and other Blinder, Robinson & Company brokers noticed that after the search was completed they were missing personal property such as yellow post tabs and pieces of paper with the names of prospective customers. II R. at 175-76. However, the government maintains, and appellants do not dispute, that those items were returned to their owners. Appellee's Brief at 9. The original customer books that the government agents seized were returned to the Blinder, Robinson & Company brokers to whom they belonged two weeks after the search was completed. III R. at 267; II R. at 159. One broker testified that there were pages missing from the brokers' books when they were returned. However, she also testified that new account cards were created for those customers to remedy that problem. II R. at 174. The court accepted appellants' offer of proof that three brokers would testify that, when the brokers' books were returned, either the cross-reference books or pages from those books were missing. II R. at 183. However, appellants do not assert that the brokers were unable to recreate those materials.[3]
 
 
 14
 Blinder, Robinson & Company and Meyer Blinder then brought an action seeking the return of seized property, and suppression of the property as evidence, pursuant to Federal Rule of Criminal Procedure 41(e). The district court denied the request for relief, holding that the warrant was valid and that the search was not unlawful. Blinder, Robinson & Company and Meyer Blinder then appealed to this court.
 
 
 15
 This court heard oral argument on the matter November 14, 1989. We take judicial notice of the fact that on February 23, 1990, while this appeal was pending, a federal grand jury returned an indictment (CR-S-90-038) in the United States District Court for the District of Nevada charging appellant Meyer Blinder and four others with the securities violations which were alleged in the application for the warrant that formed the basis of the search here at issue. Appellant Blinder, Robinson & Company was not indicted.
 
 DISCUSSION
 1. Applicability of the Amended Rule
 
 16
 Appellants brought this action pursuant to Federal Rule of Criminal Procedure 41(e) seeking the return of property which they alleged had been seized unlawfully. At the time that the district court ruled on appellants' motion, that rule provided as follows:
 
 
 17
 A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.
 
 
 18
 Fed.R.Crim.P. 41(e) (subsequently amended) (emphasis added). However, on April 25, 1989, the United States Supreme Court ordered that Federal Rule of Criminal Procedure 41(e) be amended to read as follows:
 
 
 19
 A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.
 
 
 20
 Fed.R.Crim.P. 41(e) (as amended); see 124 F.R.D. at 426-27 (1989). The Supreme Court ordered that the amended Rules of Criminal Procedure take effect as follows:
 
 ORDERED:
 
 21
 1. That the Federal Rules of Criminal Procedure for the United States District Courts be, and they hereby are, amended by including therein amendments to the Criminal Rules 11(c), 32(a) and (c), 32.1(a) and (b), 40(d) and 41(e) as hereinafter set forth:
 
 
 22
 ....
 
 
 23
 2. That the foregoing amendments to the Federal Rules of Criminal Procedure shall take effect on December 1, 1989 and shall govern all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings in criminal cases then pending.
 
 
 24
 See 124 F.R.D. at 399 (1989). Thus, as a preliminary matter, we must decide whether the present case constitutes a pending proceeding in a criminal case as described in the Supreme Court's order.
 
 
 25
 Because a pre-indictment motion under Rule 41(e) invokes the equitable jurisdiction of the court, it is technically not a proceeding in a criminal case.[4] However, such an action is governed by a Rule of Criminal Procedure, and it is therefore akin to a criminal proceeding. There is no language in the Court's order indicating an intent to treat Rule 41(e) differently from any of the other amended Rules of Criminal Procedure for purposes of establishing the effective date. We see no compelling policy considerations that would suggest that the amendments to Rule 41(e) should have a different effective date for pending litigation than the other amendments. Finally, if we were to refuse to apply Rule 41(e) to pending proceedings just because they may not technically be "criminal cases," that would present a difficulty for the prospective application of Rule 41(e) as well because the Court similarly ordered that the prospective application of Rule 41(e) "shall govern all proceedings in criminal cases thereafter commenced." Id. (emphasis added). Yet, the language of the amendment makes it perfectly clear that Rule 41(e) was to be available to persons who were not yet defendants in a criminal case if they seek recovery of property seized by the government. Therefore, we conclude that the amended Rule 41(e) applies to the present case.[5]
 
 2. Appellate Jurisdiction
 
 26
 Because the effect of a successful motion for the return of property under the former Rule 41(e) was to suppress its use as evidence in any subsequent criminal proceeding, the Supreme Court had held that such a motion was properly appealable only where it was truly a motion for the return of property unrelated to a pending criminal proceeding. In DiBella v. United States, 369 U.S. 121, 131, 82 S.Ct. 654, 660, 7 L.Ed.2d 614 (1962), the Court held that a ruling on a motion to suppress evidence is interlocutory when a criminal prosecution is in esse. Therefore, the appellate court lacks jurisdiction to review such rulings. The Court stated that "[o]nly if the motion is solely for return of property and is in no way tied to a criminal prosecution in esse against the movant can the proceedings be regarded as independent." Id. at 131-32, 82 S.Ct. at 660 (emphasis added).
 
 
 27
 a. Solely for the Return of Property
 
 
 28
 DiBella requires that we determine first whether the appellants' motion "is solely for return of property." DiBella, 369 U.S. at 131-32, 82 S.Ct. at 660. This determination has been made much easier under the amendment to Rule 41(e) because the amendment deleted the language of the former rule providing that the property returned pursuant to a successful Rule 41(e) motion would "not be admissible in evidence at any hearing or trial." The Committee notes indicate that that language was deleted because it "has not kept pace with the development of exclusionary rule doctrine and is currently only confusing.... [T]he scope of the exclusionary rule is reserved for judicial decisions." Fed.R.Crim.P. 41(e) advisory committee's note. Both because of the amendment to Rule 41(e) and because of appellants' representations that they do not seek suppression in this action, we conclude that it is one "solely" for the return of property as to both appellants Meyer Blinder and Blinder, Robinson & Company.
 
 
 29
 b. Criminal Proceeding In Esse
 
 
 30
 DiBella also requires that we determine whether the Rule 41(e) motion is in any way "tied to a criminal prosecution in esse against the movant." Id. Because appellant Meyer Blinder has been indicted and appellant Blinder, Robinson & Company has not, we analyze separately the ability of each appellant to satisfy that requirement of DiBella.
 
 
 31
 In First National Bank of Tulsa v. United States Department of Justice, 865 F.2d 217 (10th Cir.1989), this court applied the DiBella in esse test in analyzing a Rule 41(e) motion for the return of bank records allegedly seized unlawfully by Internal Revenue Service agents. Id. at 221. In Bank of Tulsa, a district court had issued grand jury subpoenas to four banks for account records of the Freeman Education Association (FEA). Id. at 218. A few months later, I.R.S. agents executed a search warrant against the FEA and seized various items. Id. at 221. On consolidated appeal of the motions to quash the subpoenas and return evidence seized pursuant to the warrant, this court concluded "that because the movants are neither under arrest nor have an indictment against them, 'the motion [for the return of property] is not made in nor dependent upon a case in esse.' " Id. (quoting Gottone v. United States, 345 F.2d 165 (10th Cir.), cert. denied, 382 U.S. 901, 86 S.Ct. 234, 15 L.Ed.2d 155 (1965) (emphasis in Gottone ). The court in Bank of Tulsa reasoned that, although there is a split of authority about whether a grand jury investigation constitutes a criminal proceeding in esse, id., this circuit's earlier decisions in Gottone v. United States 345 F.2d 165 (10th Cir.), cert. denied, 382 U.S. 901, 86 S.Ct. 234, 15 L.Ed.2d 155 (1965) and Voss v. Bergsgaard, 774 F.2d 402 (10th Cir.1985), compelled its conclusion that a grand jury investigation is not a criminal prosecution in esse.
 
 
 32
 The bright-line rule of indictment or arrest articulated in Bank of Tulsa is preferable to that followed by several of the other circuits. Because a grand jury investigation is secretive in nature, knowledge of its existence depends on government disclosures in a way that knowledge of an arrest or indictment does not. Further, the risk that an appeal of a Rule 41(e) ruling would interfere with an ongoing criminal prosecution, which was the foundation of the DiBella holding, is more speculative during a grand jury investigation than when an indictment has been filed or an arrest has occurred.
 
 
 33
 We believe the rationale of Bank of Tulsa should apply to Rule 41(e) as it has been amended. The return of an indictment removes the principal justification for allowing an interlocutory appeal from a pre-indictment Rule 41(e) ruling--the risk that a movant would never have a chance to appeal the adverse ruling if an indictment was never returned.
 
 
 34
 In DiBella, the Court explained that "finality and prohibition of piecemeal review discourage undue litigiousness and leaden-footed administration of justice, particularly damaging to the conduct of criminal cases." DiBella, 369 U.S. at 124, 82 S.Ct. at 656-57. The areas in which "Congress has recognized the need of exceptions for interlocutory orders [are] certain types of proceedings where the damage of error unreviewed before the judgment is definitive and complete, ... [and] has been deemed greater than the disruption caused by intermediate appeal." Id. In explaining DiBella, the Court has said "[d]enial of review in such circumstances would mean that the Government might indefinitely retain the property without any opportunity for the movant to assert on appeal his right to possession." United States v. Ryan, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971).
 
 
 35
 Under the prior Rule 41(e), several other circuits have concluded that the return of an indictment while appeal is pending from a Rule 41(e) ruling requires dismissal of the appeal because at that point it becomes tied to a criminal proceeding in esse. See United States v. Mid-States Exchange, 815 F.2d 1227 (8th Cir.1987); United States v. Search Warrant for 405 N. Wabash, suite 3109, 736 F.2d 1174 (7th Cir.1984); Sovereign News Co. v. United States, 544 F.2d 909 (6th Cir.1976), cert. denied, 434 U.S. 817, 98 S.Ct. 55, 54 L.Ed.2d 73 (1977); Parrish v. United States, 376 F.2d 601 (4th Cir.1967). In 405 N. Wabash, the court held that, because appellant had been indicted while his appeal from the adverse Rule 41(e) motion was pending, "there is now no danger that the government might retain [appellant's] property indefinitely without any opportunity for [him] to assert on appeal his right to possession, ... [and] we can find no basis upon which to grant piecemeal review of this claim. 405 N. Wabash, 736 F.2d at 1176. Likewise, the court in Sovereign News, concluded under parallel facts that "[r]eview of [pre-indictment Rule 41(e) ] orders should be available only in cases in which a denial of review would render impossible any appeal whatsoever." Sovereign News, 544 F.2d at 911. The result of the dismissal of the appeal in each of these cases "is to leave the appellant ... to submit his claims to the courts having the criminal prosecution in charge." Parrish, 376 F.2d at 603.
 
 
 36
 It is now clear that Meyer Blinder will have an opportunity to assert on appeal his right to the possession of the property at issue. He may move for return of the property under Rule 41(e) in the District of Nevada, and pursuant to the language of the rule, his motion will be treated as a motion under Rule 12. Should that court make a ruling unfavorable to Meyer Blinder, he will have a full right of appeal from any subsequent criminal prosecution in that court. Therefore, we hold that the appeal by Meyer Blinder of the Rule 41(e) order is dismissed for lack of appellate jurisdiction because it is tied to a criminal proceeding in esse.[6]
 
 
 37
 Blinder, Robinson & Company, however, has not been indicted, and therefore we must decide separately whether its appeal from the ruling below is tied to a criminal proceeding in esse. Following the bright-line rule of Bank of Tulsa, we conclude that it is not. Therefore, we hold that we have jurisdiction over this appeal inasmuch as it is brought by Blinder, Robinson & Company.[7]
 
 
 38
 3. Equitable Requirements Pertaining to the Appeal by Blinder, Robinson & Company
 
 
 39
 In Floyd v. United States, 860 F.2d 999 (10th Cir.1988), this court held that "a trial court's decision to grant jurisdiction over a Rule 41(e) motion for return of property should be governed by equitable principles.... A Rule 41(e) motion should be dismissed if the claimant has an adequate remedy at law or cannot show irreparable injury." Id. at 1003. Because a motion for return of property under Rule 41(e) is equitable in nature, the equitable requirements established in Floyd remain vital under the amended rule. Thus, we conclude that a showing of both irreparable injury and inadequate remedies at law is still necessary for jurisdiction over a pre-indictment Rule 41(e) motion under the amended rule.
 
 
 40
 Our review of the record discloses no finding by the district court that appellant Blinder, Robinson & Company had demonstrated irreparable injury and inadequate remedies at law.[8] In its brief, appellant Blinder, Robinson & Company asserts that the government is precluded from arguing that it failed to show irreparable injury in the district court because the government stipulated below that it had made a sufficient showing of potential "irreparable injury." Appellants' Reply Brief at 4-5. In its response to the motion for the return of property and suppression of evidence, the government conceded that the district court had jurisdiction and cited Floyd v. United States, 860 F.2d 999, 1003 (10th Cir.1988), for the proposition that imminent threat of an indictment based on illegally seized evidence constitutes irreparable harm. Although Floyd cited the case of Pieper v. United States, 604 F.2d 1131, 1134 (8th Cir.1979), for that proposition, that was not the holding of Floyd. Instead, Floyd merely remanded the matter back to the district court so that the district court could determine whether the appellant had suffered irreparable injury. Floyd, 860 F.2d at 1005. Pieper was cited merely as an one example of potential injury that should be considered. Id.
 
 
 41
 Subsequent to Floyd and Pieper, the Eighth Circuit in Matter of the Search of 4801 Fyler Ave., 879 F.2d 385, 388-89 (8th Cir.1989), petition for cert. filed, 58 U.S.L.W. 3387-88 (U.S. Nov. 22, 1989) (No. 89-870), explicitly rejected[9] the proposition that the threat of imminent criminal prosecution based on property allegedly seized unlawfully is a sufficient showing of irreparable harm.[10] The Eighth Circuit pointed out that resort to the court's equitable powers to challenge the constitutionality of a search and to obtain the return of property should be reserved for extraordinary situations, not ordinary ones, and that if the threat of criminal prosecution was sufficient to establish irreparable harm, actions for the return of property under the court's equitable power would become quite ordinary because the threat of imminent indictment is nearly always present. The court said, "if we were to allow the mere threat of future prosecution to constitute irreparable harm these procedures would not be extraordinary, but quite ordinary.... We therefore must conclude that the possible stigmatization of defending oneself in a criminal trial is an insufficient harm to justify the district court's use of its equitable powers." Id. at 389.
 
 
 42
 We agree with the analysis of the Eighth Circuit in 4801 Fyler Ave., and hold that the mere threat of imminent indictment does not establish irreparable injury as required for a motion under Rule 41(e). That is particularly clear under the amendment to Rule 41(e) because Rule 41(e) no longer deals with suppression except in one limited situation not involved here.[11] Rather, it now addresses only the return of materials seized by the government. Even if the property is returned under Rule 41(e), the government is not precluded from using such property in seeking an indictment against the defendant. The court is authorized to impose conditions upon the return of property to protect the government's legitimate access to and use of such property in subsequent proceedings. Thus, if appellant Blinder, Robinson & Company is to establish irreparable injury, it must be because of an ongoing business need to recover original copies of the documents seized rather than a desire to avoid use by the government of such documents to seek an indictment against it.
 
 
 43
 On the basis of the record before us, we cannot say as a matter of law that appellant Blinder, Robinson & Company has established either irreparable injury or an inadequate remedy at law. Quite to the contrary, the record strongly suggests that Blinder, Robinson & Company is able to operate with photocopies of the documents seized by the government and either has copies or can make copies of all the property that the government seized. However, issues of irreparable injury and inadequate remedies at law are matters that should be addressed by the district court in the first instance. Therefore, we remand this case to the district court for additional findings and/or proceedings on those issues.
 
 
 44
 If on remand the district court determines that appellant Blinder, Robinson & Company is able to satisfy the equitable requirements necessary for jurisdiction, then the district court must apply Rule 41(e) as amended. Because the amended rule allows "[a] person aggrieved by ... the deprivation of property" to make a Rule 41(e) motion for return of property without alleging that the seizure was unlawful, the district court must reevaluate the appellant's motion. It is no longer sufficient to deny relief merely by concluding that the seizures were lawful. If the district court determines to grant appellant's motion, then it is authorized by the rule to impose "reasonable conditions ... to protect access and use of the property in subsequent proceedings" by the government. We emphasize that our disposition of this appeal in no way constitutes a decision on the lawfulness of the search or the validity of the warrant at issue. Our decision does not foreclose Blinder, Robinson & Company's ability to raise those issues either in an appeal from the decision of the district court on remand in this case, or on appeal from any subsequent criminal proceeding in which the seized materials are used, should Blinder, Robinson & Company be indicted, nor do we preclude Meyer Blinder from challenging the constitutionality of the search warrant in the criminal action now pending against him.
 
 CONCLUSION
 
 45
 As to appellant Meyer Blinder, the appeal is DISMISSED for lack of jurisdiction. As to appellant Blinder, Robinson & Company, the case is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 Appellants argued to the district court that the warrant was overly broad because the list of documents was not restricted to the enumerated corporations and nominees. The district court disagreed and held that a reasonable reading of the warrant indicated that the categories of documents were properly limited to the specified corporations and nominees. We do not reach the issue for the reasons explained below. Our disposition of this appeal is not a ruling on the validity of the warrant or the legality of the search
 
 
 [2]
 According to the appellants,
 Due diligence files include information required to demonstrate that there is a reasonable basis for publishing a particular bid in the National Daily Quotation Sheets or on NASDAQ (National Association of Securities Dealers Automated Quotation System). The information includes a recent balance sheet for the corporation, a list of officers and directors, the number of shares issued and retained, and the nature of the issuer's business.
 Appellant's Brief at 18, n. 12. See 17 C.F.R. Sec. 240.15c2-11 (1984).
 
 
 [3]
 In any event, the owners of the above items of personal property, the brokers, were not designated as parties to the present appeal. I R. at Doc. 4. Therefore, the appellants cannot bring a motion to return those items because they are not entitled to "lawful possession of the property" as required by Rule 41(e)
 
 
 [4]
 Although the indictment recently returned in the District of Nevada constitutes a "proceeding in a criminal case" in that district, the applicability of the amended rule to this case is based on the proceedings in the United States District Court for the District of Colorado, in which no criminal proceeding has been commenced
 
 
 [5]
 The application of the amendments to Rule 41(e) to pending proceedings is further limited to situations in which such application would be "just and practicable." We see no practical impediment to application of the amendments to this case, nor does it seem unjust to do so. As discussed infra, because an indictment has been returned against Meyer Blinder, the dismissal of his appeal under the amended rule is the same result that we would reach were we to apply the prior version of Rule 41(e). The relief afforded to Appellant Blinder, Robinson & Company is at least as great under the amended rule as under the prior version of Rule 41(e), given appellants' statements during oral argument that they were no longer seeking suppression in this action
 
 
 [6]
 For slightly different reasons, a similar outcome would have resulted as to Meyer Blinder if his Rule 41(e) motion had been pending before the district court below when the indictment was returned in Nevada. In this circuit, district court jurisdiction over a pre-indictment Rule 41(e) motion for the return of property is contingent upon the movant's ability to demonstrate an inadequate remedy at law. Once a movant has been indicted, an adequate legal remedy is available in the district court with jurisdiction over the indictment and equitable jurisdiction is no longer necessary or proper
 
 
 [7]
 One circuit has concluded that an indictment brought against one of two co-appellants while appeal from an adverse Rule 41(e) ruling was pending necessitated dismissal as against both under DiBella. See Parrish, 376 F.2d at 603. However, we cannot conclude on the record before us that the interests of Meyer Blinder and Blinder, Robinson & Company are so closely aligned that Blinder, Robinson & Company's interests would be fully represented by Meyer Blinder in any subsequent proceedings in the District of Nevada. Moreover, the record is inadequate for us to determine what legal interests Meyer Blinder and Blinder, Robinson & Company each have in the property at issue
 
 
 [8]
 Responding to the government's argument that appellant failed to show irreparable injury, appellant claims that "[t]he District Judge raised the issue of jurisdiction sua sponte." Appellants' Reply Brief at 4. However, appellant has failed to support this statement with citation to the record. Our review of the record discloses no evidence that the district court either addressed or ruled upon the equitable requirements for jurisdiction
 
 
 [9]
 In 4801 Fyler Ave., 879 F.2d at 386, the district court ordered the return of property under its "anomalous" jurisdiction in equity, and not under Rule 41(e). Thus, suppression of the use of the property was not at issue in that case
 
 
 [10]
 The court discussed and rejected the reasoning of Richey v. Smith, 515 F.2d 1239, 1243 (5th Cir.1975), the case which Pieper had cited for the proposition that "[r]elief is sought at the pre-indictment stage in order that the accused might be spared the irreparable harm of a stigmatic criminal indictment." Pieper, 604 F.2d at 1134
 
 
 [11]
 Under Rule 41(e), only when the motion is brought after an indictment has been filed in the same district will it be treated as a Rule 12 motion