In re The Matter of the SEARCH OF KITTY'S EAST, 735 E. Colfax Avenue, Denver, Colorado.

KITTY'S EAST, Appellant,

v.

UNITED STATES of America, Appellee.

No. 88–2937.

United States Court of Appeals, Tenth Circuit.

June 7, 1990.

Michael W. Gross (Arthur M. Schwartz with him on the brief), Denver, Colo., for appellant.

Michael J. Norton, Acting U.S. Atty. (Catharine M. Goodwin, Asst. U.S. Atty., with him on the brief), Denver, Colo., for appellee.

Before LOGAN and BRORBY, Circuit Judges, and BRATTON, District Judge.[*]

LOGAN, Circuit Judge.

This case comes to us on appeal from the district court's denial of the motion of Kitty's East (Kitty's) for return of property under Fed.R.Crim.P. 41(e). The procedural posture requires that we first consider our jurisdiction to decide this appeal. Because we find that we have jurisdiction, that we should apply Rule 41(e) as it was revised after the district court's decision, and that the seizures from Kitty's were lawful and do not unreasonably deprive Kitty's of its property, we affirm the decision, although upon a different analysis than that expressed by the district court.

Kitty's is an establishment engaged in providing "adult entertainment." As part of its business, Kitty's sells, rents, and exhibits so-called "adult" books, magazines, films, and videotapes. On June 30, 1988, federal agents served two warrants on Kitty's. Warrant 88–774M (the national warrant) sought materials in connection with violations of 18 U.S.C. §§ 1462, 1465 (interstate transportation, distribution, and sale of obscene materials), § 371 (conspiracy), and § 1956 (money laundering). Warrant 88–765M (the local warrant) was issued as part of a local investigation under §§ 1462, 1465.

On July 11, 1988, Kitty's filed a motion in the district court for return of property pursuant to Rule 41(e). After an evidentiary hearing, the district court found both the local and national warrants to be overbroad. The court also found, however, that the officers executing the warrants relied on their terms in good faith and that there were no indications of overbreadth on the face of the warrants. The court therefore ruled that the property seized was not subject to the exclusionary rule, and it denied Kitty's motion for return of the property.

Kitty's has appealed the district court's denial of its motion. In response the government challenges the district court's jurisdiction to entertain Kitty's Rule 41(e) motion in the first place and disputes the court's findings of overbreadth. Alternatively, of course, it defends the district court's good faith finding under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

I

We first note that Rule 41(e) has undergone significant revision since the district court's decision, which changes significantly impact this appeal. The current version of the rule provides as follows:

"A person aggrieved by an unlawful search and seizure *or by the deprivation of property* may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is

* The Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation.

filed, it shall be treated also as a motion to suppress under Rule 12."

Fed.R.Crim.P. 41(e) (as amended) (emphasis added); *see* 124 F.R.D. 397, 407–08 (1989). Before amendment, the rule provided for return of property only if it was illegally seized and required automatic suppression of any property returned. *See* 124 F.R.D. at 426–27. The amendments took "effect on December 1, 1989 and ... govern all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings in criminal cases then pending." *Id.* at 399.[1] We will apply the 1989 amendments to the instant case and rely upon prior Rule 41(e) jurisprudence only to the extent it retains vitality in light of these substantive revisions.

## II

Initially we must address our jurisdiction to hear this appeal. A party dissatisfied with the ruling on a Rule 41(e) motion may immediately appeal only under certain circumstances outlined by the Supreme Court in *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). The Court held that an unsuccessful movant may advance an interlocutory appeal only if the motion (1) is "in no way tied to a criminal prosecution *in esse* against the movant" and (2) is "solely for return of property." *Id.* at 131–32, 82 S.Ct. at 660.[2]

 This circuit has consistently held that there is no prosecution *in esse* until an arrest is made or an indictment or information is issued. *Blinder, Robinson & Co. v. United States (In re Search of 6455 S. Yosemite)*, 897 F.2d 1549, 1554–55 (10th Cir.1990); *First Nat'l Bank v. U.S. Dep't of Justice*, 865 F.2d 217, 221 (10th Cir. 1989); *Gottone v. United States*, 345 F.2d

165, 165 (10th Cir.1965). In the instant case, although a grand jury has been empaneled, no indictment has been returned against either Kitty's or its parent corporation. Therefore, there is no prosecution *in esse* with respect to Kitty's.

*DiBella*'s second condition for interlocutory appeal requires that the Rule 41(e) motion be solely for the return of property. In *DiBella*, the Court made a distinction between true motions for return of property and motions for suppression dressed as motions for return of property. By amending the rule to preclude suppression as a de facto result of returning the property, the Court has made every Rule 41(e) motion into one solely for the return of property. Illegality of a search for purposes of Rule 41(e) and the scope of the exclusionary rule have been separated by the 1989 amendments. *See Blinder, Robinson*, 897 F.2d at 1554; Amendments to Fed.R.Crim.P., Rule 41(e) committee note at 30, 124 F.R.D. at 428 [hereinafter Committee Note to 1989 Amendment]. Because there is no prosecution *in esse* against Kitty's, and because the Rule 41(e) motion must be viewed as one solely for the return of property, we have jurisdiction to consider this appeal.

## III

 The government challenges the jurisdiction of the district court to entertain Kitty's Rule 41(e) motion. We have held that entertaining a preindictment Rule 41(e) motion is an exercise of equitable jurisdiction which should be undertaken with "caution and restraint." *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir.1988). Accordingly, we have stated two conditions that must be satisfied be-

---

**1.** Despite the fact that Rule 41(e) is a rule of criminal procedure and that the provision on the effective date of the 1989 amendments refers to "proceedings in criminal cases," Rule 41(e) is applicable when there are no criminal proceedings pending. *Blinder, Robinson & Co. v. United States (In re Search of 6455 S. Yosemite)*, 897 F.2d 1549, 1553–54 (10th Cir.1990); *Floyd v. United States*, 860 F.2d 999, 1006–07 (10th Cir.1988). Furthermore, we believe that the limitation on application of the 1989 amendments to proceedings pending on December 1, 1989, only "insofar as just and practicable"

presents no obstacle to their application to the case at bar.

**2.** The Supreme Court enunciated these conditions primarily to restrict interlocutory appeals to "final" decisions in order to minimize the disruption of ongoing criminal proceedings. *See DiBella*, 369 U.S. at 124, 126, 82 S.Ct. at 657–58. Of course, an unsuccessful movant may wait until the end of an ensuing prosecution and appeal after final judgment.

fore a district court may assume jurisdiction over a preindictment Rule 41(e) motion: a movant must demonstrate that being deprived of actual possession of the seized property causes "irreparable injury," and must be otherwise without adequate remedy at law. *Id.*

The government argues that the district court erred in holding an evidentiary hearing on the Rule 41(e) motion because (1) Kitty's failed to prove irreparable injury, and (2) an evidentiary hearing on the merits of a Rule 41(e) motion is inappropriate unless the movant alleges "outrageous government conduct." We disagree and affirm the district court's exercise of jurisdiction, although with some modifications.

■ The district court did not err when it failed to cite outrageous government conduct to justify its hearing. In *Floyd* we noted that Rule 41(e) requires only an allegation that the search or seizure was unlawful, not that the government's conduct exceeded unlawfulness and rose to the level of callousness or outrageousness. 860 F.2d at 1003. This conclusion is bolstered by the 1989 amendments to Rule 41(e). Under the former rule, the movant had to allege an "unlawful search and seizure." Under the current form of the rule, however, the movant need only allege a "deprivation of property" by the government. *See* Committee Note to 1989 Amendment, at 28, 124 F.R.D. at 426.

■ The district court held that the imminence of an indictment based on the seized materials constituted irreparable injury sufficient for its exercise of jurisdiction, relying on the citation in *Floyd*, 860 F.2d at 1006, to *Pieper v. United States*, 604 F.2d 1131, 1134 (8th Cir.1979) (imminent indictment sufficient injury for exercise of equitable jurisdiction). But in

*Floyd* the citation to *Pieper* was merely to illustrate that "irreparable harm refers to circumstances in which a Rule 41(e) movant cannot wait for a legal remedy, thus justifying the court's equitable jurisdiction." *Floyd*, 860 F.2d at 1006. The Eighth Circuit has since rejected the proposition that imminent indictment is injury sufficient to invoke Rule 41(e) jurisdiction, *Kiesel Co. v. Householder (In re Search of 4801 Flyer Ave.)*, 879 F.2d 385, 388–89 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990), and this circuit has also recently held that "the mere threat of imminent indictment does not establish irreparable injury as required for a motion under Rule 41(e)," *Blinder, Robinson*, 897 F.2d at 1557.

■ Kitty's has asserted another harm, however: It argues that the postponement or denial of the exercise of First Amendment rights may constitute irreparable injury, that the seizure of videotapes from its store prohibited or at least impaired the exercise of such a right, and that, therefore, the district court did not err in exercising its equitable jurisdiction to review this prior restraint.[3] To support its argument, Kitty's cites such political speech cases as *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *National Socialist Party of Am. v. Village of Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977). Although the interests of the commercial speech at issue here may not equate with those of political speech, we agree that the special protections of the First Amendment justified the exercise of equitable jurisdiction in this case.[4]

It is axiomatic that the timing of speech is often crucial to its impact and that prior restraints are presumptively unconstitu-

3. At least some of the materials seized at Kitty's were videotapes. These are presumptively protected by the First Amendment. *See Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 928–29, 103 L.Ed.2d 34 (1989). While it is true that obscenity is not protected speech, there has not yet been a conclusive judicial determination of the obscenity of the videotapes seized in the search.

4. In its analysis, the Supreme Court has not distinguished between political and commercial

speech when it has held that any prior restraint must be followed by prompt judicial review. *See National Socialist Party*, 432 U.S. at 44, 97 S.Ct. at 2206, *and Dombrowski v. Pfister*, 380 U.S. 479, 489, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965) (both citing *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (censorship of obscene films must be promptly reviewed on the merits)).

tional. *Elrod,* 427 U.S. at 373–74 & n. 29, 96 S.Ct. at 2689–90 & n. 29; *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70–71, 83 S.Ct. 631, 639–40, 9 L.Ed.2d 584 (1963). The promise of review of a prior restraint at some indefinite, future time does not meet constitutional requirements. *See, e.g., Heller v. New York,* 413 U.S. 483, 492, 93 S.Ct. 2789, 2794–95, 37 L.Ed.2d 745 (1973) (after seizure pursuant to proper warrant, prompt judicial determination of obscenity on the merits necessary to preserve First Amendment rights); *Freedman v. Maryland,* 380 U.S. 51, 59, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965) ("Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution."); *Dombrowski v. Pfister,* 380 U.S. 479, 489, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965) (federal injunction of state law enforcement appropriate when delay of state adjudication may chill political speech). Because a prior restraint must be reviewed on the motion of the party restrained at the earliest point "compatible with sound judicial resolution," *Freedman,* 380 U.S. at 59, 85 S.Ct. at 739, we find the district court's decision to exercise its equitable jurisdiction proper.

### IV

### A

The district court, after finding the warrants overbroad, denied Kitty's motion on the basis of the *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), good-faith exception to the exclusionary rule. *Leon* applies only to motions to suppress and their equivalents. Under Rule 41(e) as it existed when the district court made its ruling, return of property was also a de facto suppression; hence reference to *Leon* was proper. Under the rule as it now exists, however, suppression and return of property are separate and distinct inquiries. *See Blinder, Robinson,* 897 F.2d at 1557–58; Committee Note to 1989 Amendment, at 30, 124 F.R.D. at 428. Consequently, *Leon* is no longer applicable

to Rule 41(e) motions. Therefore, we must consider the government's challenge to the district court's determinations that the warrants were overbroad, which is subject to de novo review in this court. *United States v. Leary,* 846 F.2d 592, 600 (10th Cir.1988).

### B

▮ Paragraph A of the local warrant authorized seizure of eighteen named videotapes, the contents of which were described in detail in the affidavit presented to the magistrate and attached to the warrant. The district court held Paragraph B to be overbroad because it authorized seizure of materials the obscenity of which had not been determined by a judicial officer. Paragraph B authorized seizure of:

> "video cassette tapes with black and white covers similar in appearance and displayed in the same proximity to those listed above, of which the principal subject matter is: urination (urolagnia), fisting, and/or piercing which, considered as a whole, appeal to the prurient interest in sex and which have no serious literary, artistic, political, or scientific value."

I R. tab 5, at 25. With regard to the paragraph B videotapes, the affidavit described in detail the appearance of the "black and white" covers of the videos, the location of the video display case in which they were stored, the cost of the videos (up to thirty dollars more than other videos in the store) and the precise definitions of "urination," "fisting," and "piercing."

Kitty's argues that this seizure violated the rule of *Marcus v. Search Warrant,* 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961), that no material presumptively protected by the First Amendment may be seized unless a neutral judicial officer has focused "searchingly on the question of obscenity." Kitty's also argues that the warrant unconstitutionally failed to describe with sufficient particularity the videotapes to be seized under paragraph B. Kitty's correctly observes that "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupu-

lous exactitude when ... the basis for their seizure is the ideas which they contain." *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511–12, 13 L.Ed.2d 431 (1965). We must therefore address the issues whether the magistrate focused searchingly on the question of the obscenity of the paragraph B videotapes and whether paragraph B, in conjunction with the affidavit, contained a description of sufficient particularity to pass constitutional muster.

The officers executing the local warrant were not left to their own devices in determining which videotapes they should seize as obscene and which subjects were most offensive. The local warrant listed eighteen named videotapes and described in detail, though not by name, other seizable videotapes. This case therefore differs from *Lo–Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979). In *Lo–Ji,* the Supreme Court held invalid a general search warrant issued by a magistrate who then accompanied the police to the bookstore to make on-the-spot determinations of obscenity. Once the magistrate identified an item as obscene, he then instructed the police to seize all similar items. The determination of what constituted a "similar" item was, however, left solely to the discretion of the executing officers. *Id.* at 327, 99 S.Ct. at 2324–25. In contrast, in the instant case the videotapes to be seized under paragraph B were specifically identified by all but title; subject matter, appearance, price, and location were detailed in the warrant and attached affidavit. The description in the warrant was more specific than those approved in similar cases by two other circuits. *See Sequoia Books, Inc. v. McDonald,* 725 F.2d 1091, 1093 (7th Cir.) (nine named magazines plus magazines, movies, and videotapes containing depictions of certain specified sex acts), *cert. denied,* 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984); *In re Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir.

1981) (books, magazines, and films depicting specific sex acts described in affidavits attached to warrant).

Regarding whether the magistrate was able to focus searchingly enough on the obscenity of the unnamed videotapes, we observe that the magistrate was presented with affidavits describing eighteen videotapes, each of which was deemed by him to be obscene. Each of these eighteen videotapes was enclosed in a black and white cover; each was chosen from the same display area; each was priced significantly above the general price of videotapes at Kitty's; each had as its primary subject fisting, urolagnia and/or piercing. We do not think it unreasonable for the magistrate to conclude, based on the descriptions of the eighteen named videotapes, that there was probable cause to believe that other videotapes identical in appearance to those reviewed, available in the same display area, and having the same subject matter, were equally obscene. Although ordinarily it would be preferable to identify the videotapes by name and include in the affidavit descriptions of the specific contents of each videotape, under the circumstances of this case we do not deem the failure to do so constitutionally fatal, particularly given that this was a seizure to secure evidence and not a seizure for the purposes of suppressing or destroying the allegedly obscene material. *See Heller,* 413 U.S. at 492, 93 S.Ct. at 2794–95.[5]

We also reject Kitty's contention that the magistrate's inclusion of the definition of obscenity in the last clause of paragraph B unconstitutionally delegated the determination of obscenity to the executing officers. Based on the descriptions in the affidavit, it was reasonable for the magistrate to conclude that videotapes similar to the eighteen reviewed by the federal agents were obscene. The overabundance of caution that led him to include in paragraph B the

**5.** Kitty's has not alleged, and no evidence has indicated, that the seizure netted all copies of the films in question, thereby transforming the seizure into a total censorship of the films in question. The Supreme Court has held that such a showing is the burden of the movant.

*New York v. P.J. Video, Inc.,* 475 U.S. 868, 875 n. 6, 106 S.Ct. 1610, 1615 n. 6, 89 L.Ed.2d 871 (1986). Testimony at the hearing indicated that the officers seized no more than two copies of all but one film, and only three copies of that film. V R. 75.

definition of obscenity could not expand the limits of the search beyond materials already deemed by him to be obscene. *Accord Sequoia Books,* 725 F.2d at 1093. A determination of obscenity by the executing officers based on their own views of community morality could only narrow an already constitutionally valid warrant.

## C

■ The district court held that Paragraph C of the national warrant, which authorized seizure of various business records dating back to January 1, 1983, was overbroad in that it allowed seizure of materials that substantially predated the effective date of the money laundering statute being enforced. In addition, the court held that the scope of the government's investigation of obscenity, which covered only the year 1988, could not support such a seizure. Kitty's argues that the language of paragraph C of the warrant was also overbroad in that it did not provide sufficient guidance to the officers regarding which business records were seizable and which were not.[6] Kitty's alleges that the officers seized most or all of the business records on the premises.[7]

First, while the language of the warrant is broad, we hold that it is not fatally so when read in the common sense fashion required by *United States v. Ventresca,*

380 U.S. 102, 108, 85 S.Ct. 741, 745–46, 13 L.Ed.2d 684 (1965). As the Eighth Circuit has noted, "there is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized." *United States v. Davis,* 542 F.2d 743, 745 (8th Cir.), *cert. denied,* 429 U.S. 1004, 97 S.Ct. 537, 50 L.Ed.2d 616 (1976).

The supporting affidavit recites sufficient evidence to constitute probable cause to believe that the entities specified in paragraph C were engaging in a conspiracy to transport and sell obscene materials and to launder money. Evidence of conspiracy is often hidden in the day-to-day business transactions among the involved entities; therefore, it seems reasonable that the government would need to examine the documentation of these transactions to investigate a conspiracy.

There is no question, however, that the warrant's language approaches the very thin line between the comprehensiveness necessary to effective law enforcement and a failure of particularity which permits law officers to engage in a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). Paragraphs B, C, E, and F of the warrant describe virtually every kind of document that ordinarily might be found in

---

6. Paragraph C authorized seizure of:

 "[a]ny business, financial and/or accounting records from January 1, 1983, to present, involving the receipt, transfer, commingling and/or expenditure of proceeds, funds, or assets, for, by, between, or on behalf of [13 named business entities] or any employee, agent, owner, or subsidiary of the above named companies, including but not limited to [5 named individuals] including but not limited to documents with respect to a financial institution, such as deposits, withdrawals, transfers between accounts, exchange of currency, loans, extensions of credit, purchase or sale of any stock, bond, certificates of deposit, or any other monetary instrument, or any record of other payment, transfer, or delivery by, through, or to a financial institution of any such funds, including records or copies of any coin or currency of the United States, travelers checks, personal checks, bank checks, money orders, or investment securities, or local, state or federal tax records."

I R. tab 2, attachment 2, at 2–3.

7. It is not clear whether Kitty's also objects to the seizure of documents pursuant to paragraph B of the national warrant. Paragraph B authorized seizure of documents concerning the acquisition, sale, shipment, rental, display, etc., of the videotapes named in the warrant's first paragraph. To the extent that Kitty's is arguing that this paragraph is overbroad, we reject the argument. We note that this is not an instance, like that described in *United States v. Guarino,* 610 F.Supp. 371, 376 (D.R.1.1984), in which the officers were told to seize records relating to obscene materials, but those materials had not been identified nor judicially determined to be obscene. In the instant case, a magistrate had found probable cause to believe the named videotapes were obscene. They were clearly identified in the warrant. The officers executing the warrant had only to select those documents that referred in the specified manner to the listed videotapes.

a business such as Kitty's. Kitty's argues on the strength of our opinions in *Voss v. Bergsgaard*, 774 F.2d 402 (10th Cir.1985), and *United States v. Leary*, 846 F.2d 592, 600–06 (10th Cir.1988), that this warrant is, therefore, impermissibly broad.

This warrant is more particular than those at issue in *Leary* or *Voss*. In *Leary* and *Voss* the warrants contained a similar laundry list of types of documents and authorized seizure of all described documents having to do with specified federal statutes. But, in *Leary* we suggested that further restrictions on the scope of the search—such as a date restriction or a restriction based on references to specified companies allegedly involved in the criminal activity or a restriction based on a certain product or transaction—might have rendered the warrant sufficiently particular to be constitutional. 846 F.2d at 604. Such restrictions were clearly incorporated into the instant warrant.

Because the executing officers could not, in compliance with the warrant, seize any and all business records on Kitty's premises, but rather were restricted to those referring to certain products, certain businesses or individuals, and certain time periods, we hold that the provisions of the national warrant were not facially overbroad. These restrictions are sufficient to allow executing officers, acting in good faith, "to distinguish between items that may and may not be seized." *Leary*, 846 F.2d at 602.[8]

■ With regard to the date restriction of the warrant, we hold that the trial court erred in ruling it overbroad. The money laundering statute, 18 U.S.C. § 1956, had an effective date in 1986, and, therefore, documents predating that year could not form the basis of a money laundering violation. But the other charges specified in the warrant—conspiracy and interstate transportation, distribution, and sale of obscene materials, 18 U.S.C. §§ 371, 1462,

1465—all had a five-year statute of limitations, 18 U.S.C. § 3282, which allowed for prosecution of violations dating back to 1983. The affidavit provided probable cause to believe that the thirteen named business entities were involved in violations of all of these provisions.

We share the district court's concern that the surveillance and federal investigation covered only 1988. We cannot, however, as a practical matter limit the scope of the seizure to documents from that year. The affidavit provided probable cause to suspect illegal activity prior to 1985. We see nothing inherently unreasonable in the choice of the statute of limitations as a date restriction on the scope of the warrant. Accordingly, we hold that the scope of the warrant with regard to age of documents was not improper.

## V

■ The new wording of Rule 41(e) requires us to consider not only the lawfulness of the search and seizure, but also whether Kitty's is aggrieved by a deprivation of its property, despite the legality of the search. *See Blinder, Robinson*, 897 F.2d at 1557–58. A movant must demonstrate that retention of the property by the government is unreasonable in order to prevail on a Rule 41(e) motion.

"[R]easonableness under all of the circumstances must be the test when a person seeks to obtain the return of property. If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable."

Committee Note to 1989 Amendment, at 30, 124 F.R.D. at 428.

---

**8.** Kitty's has introduced a list of documents seized by the government which it asserts exceed the warrant. Since the government has apparently complied with all of Kitty's requests for copies of documents seized, *see* IV R. 8–9; V R. 101–02, we will not order return of any of these documents. *See* Committee Note to 1989 Amendment, at 29–31, 124 F.R.D. at 427–29. We do not here intend to preclude Kitty's from rearguing the issue in a later motion for suppression of anything seized that in fact is not authorized by the warrant.

Kitty's has failed to demonstrate that it is aggrieved by an unreasonable retention of the property. With regard to the videotapes seized, Kitty's has made no argument that the seizure has precluded all exhibition or rental of the videotapes in question. Kitty's First Amendment rights are not sufficiently infringed by the government's seizure for evidence of a few copies of a limited number of videotapes to be "aggrieved" under Rule 41(e). *Cf. Heller v. New York*, 413 U.S. 483, 490–93, 93 S.Ct. 2789, 2793–95, 37 L.Ed.2d 745 (1973) (government may seize limited number of books to preserve as evidence without prior adversary hearing); *and Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 928–29, 103 L.Ed.2d 34 (1989) (must be adversary hearing before censoring books or films). Further, return of the videotapes would pose too great a risk of loss of potential evidence. As the Supreme Court has noted, "such films may be compact, readily transported for exhibition in other jurisdictions, easily destructible, and particularly susceptible to alteration by cutting and splicing critical parts of film." *Heller*, 413 U.S. at 493, 93 S.Ct. at 2795. We hold, therefore, that the government's retention of no more than two evidentiary copies of each film is reasonable and does not "aggrieve" Kitty's under Rule 41(e).[9]

Testimony at the hearing revealed that the government has returned copies of any business documents requested by Kitty's. Under these circumstances we do not see how the government's retention of original documents aggrieves Kitty's. We conclude, therefore, that Kitty's is not entitled to the return of the documents retained by the government.

Accordingly, the district court's denial of Kitty's motion for return of property was proper.

AFFIRMED.

---

**9.** This determination is subject to review and modification by the district court in the event that Kitty's introduces evidence that the government's seizure has totally precluded dissemination of the films in question. *See Heller*, 413 U.S. at 492–93, 93 S.Ct. at 2794–95.