**SEQUOIA BOOKS, INC., an Illinois corporation, d/b/a Denmark II, Plaintiff-Appellant,**

v.

**Charles McDONALD, individually and in his capacity as Sheriff of the County of Kendall, Illinois, et al., Defendants-Appellees.**

No. 83–1699.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1983.

Decided Jan. 6, 1984.

As Amended on Denial of Rehearing Feb. 6, 1984.

---

J. Steven Beckett, Reno, O'Byrne & Kepley, Champaign, Ill., for plaintiff-appellant.

James R. Schirott, Schirott & Elsner, Itasca, Ill., for defendants-appellees.

Before PELL, CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

Sequoia Books, a corporation that owns a bookstore in the town of Aurora, in Kendall County, Illinois, brought this civil rights suit under 42 U.S.C. § 1983 against county law-enforcement officers and the county itself, seeking injunctive relief and damages

in respect of the defendants' seizure under warrant of several hundred magazines, movies, and videotapes from the store. The district court denied a motion for a preliminary injunction, and concluding that Sequoia could not possibly establish a right to damages dismissed the complaint in its entirety. Sequoia has appealed, but asks only that the part of the district court's order denying equitable relief (return of the seized magazines and an injunction against future seizures) be reversed. Sequoia acknowledged at argument that it would not be able to prove damages.

■ The Fourth Amendment provides (so far as pertains to this case) that "no Warrants shall issue, but upon probable cause, ... particularly describing the ... things to be seized." The State of Illinois makes it a crime, see Ill.Rev.Stat.1981, ch. 38, ¶ 11–20, as it may without violating the First Amendment, *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), to sell pornography; and there is no doubt that the magistrate who issued the warrant for the seizures from Sequoia's bookstore had probable cause to believe that the materials seized were pornographic. Although he did not have before him copies of any of those materials, he did have a detailed affidavit from a police investigator which described in minute and indeed rather disgusting detail nine magazines that the investigator had read in the store. The least unprintable of the descriptions reads as follows: "Magazine entitled 'Let's F ...' containing therein pictures describing vaginal intercourse, anal intercourse, cunnilingus and fallatio [sic]." The affidavit provided an adequate basis for the "searching review" that the magistrate is required (by such cases as *Heller v. New York,* 413 U.S. 483, 488–89, 93 S.Ct. 2789, 2792–93, 37 L.Ed.2d 745 (1973)) to undertake before issuing a warrant for the seizure of obscene materials, and established probable cause for the warrant. *United States v. Espinoza,* 641 F.2d 153, 163–64 (4th Cir.1981); *Sovereign News Co. v. United States,* 690 F.2d 569, 572 (6th Cir.1982) (dictum).

■ On the basis of this affidavit the magistrate issued a warrant authorizing the seizure from the store of not only the nine magazines described in the affidavit but any "Magazines, movies and video tapes containing depictions or portion[s] thereof of the following: Cunnilingus, fellatio, anal intercourse, vaginal intercourse, excretion of semen from penis onto other person, masturbation, vaginal or anal insertion of prosthethic [sic] devices, insertion of tongue into anus; which has if considered as a whole a predominant appeal to the pruirent [sic] interest and has no serious educational, literary, artistic or political value and has no socially redeeming value." Sequoia argues that the description was not sufficiently particular to satisfy the Fourth Amendment read in light of the First Amendment, because it did not prevent the officers, incorrectly appraising the educational, aesthetic, or political value of the magazines, movies, and videotapes that Sequoia sells, from seizing items that might be protected by the First Amendment despite their graphic treatment of sex. But the part of the description that refers to value was surplusage, no doubt added by the magistrate simply out of an abundance of caution, and it can be ignored. By confining the officers to seizing materials that contained depictions (in context, photographic) of sexual intercourse and the variants thereof described in the warrant, the warrant satisfied the requirement of particular description; and the inclusion of the language about redeeming values did not broaden, though it may not effectively have narrowed, the warrant's scope.

■ There was, it is true, a possibility that photographs of sexual acts might be redeemed by aesthetic or other values, and hence that the officers might seize constitutionally protected materials. But the possibility was slight. And it must be remembered that seizure under a warrant is not destruction (a distinction stressed in *Heller v. New York, supra,* 413 U.S. at 488–93, 93 S.Ct. at 2792–95); it is temporary removal from the owner's possession; the state cannot destroy a magazine as obscene without

proving that its prurient character is unredeemed by artistic or other socially valuable properties. The slight possibility of a temporary suppression of constitutionally protected sex magazines is not enough to invalidate the warrant under the Fourth Amendment. Nor would it be feasible to eliminate even this slight possibility by requiring that the warrant name the particular issues of the particular magazines to be seized. The defendant officers would have had to buy every issue of every magazine (and every movie and videotape) that they thought obscene—not just the nine magazines that they described to the magistrate. But their attempts to do so would have aroused Sequoia's suspicions, and it would have refused to sell to them. Or if the officers had reason to believe that Sequoia was warehousing obscene magazines somewhere, under Sequoia's view they could not search the warehouse unless they happened to know the names and dates of particular magazines, and those would be the only items they could seize.

The law does not tie law enforcers' hands so tightly. *In re Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir.1981), upheld a warrant very similar to the one in this case—except that it made no reference to redeeming value. And a vaguer warrant ("obscene magazines, including, but not limited to magazines entitled 'Erotic Hands'") was upheld in *United States v. Espinoza, supra,* 641 F.2d at 163–65. *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 326–27, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979), the case on which Sequoia mainly relies, invalidated a warrant that authorized the executing officers to seize materials "similar" to those the magistrate had determined probably were obscene. That delegation was too broad, but here the officers were confined to sexually graphic depictions. Also in *Lo-Ji* the magistrate joined the officers in their foray into the defendant's store and conducted a probable-cause hearing on the spot, and the Supreme Court thought that by doing this he had lost his neutrality. *Id.* at 328, 99 S.Ct. at 2325. There is nothing like that here.

We have assumed so far that the defendants' purpose in seizing the magazines and other items was the lawful one of obtaining evidence for a criminal prosecution. If instead their purpose was to drive Sequoia out of business without due process of law, or even just to harass Sequoia by strewing its stock of magazines on the floor, it would be no defense to a civil rights suit that the officers had in their possession a warrant valid on its face. See *Johnson v. Miller,* 680 F.2d 39, 42 (7th Cir.1982). At argument Sequoia's counsel said that the defendants had had an improper purpose, and in support of this contention he noted that the criminal prosecution against the store's sales clerk had been dismissed (though he added that the dismissal has been appealed) and that the executing officers had deposited on the floor of the store the magazines they had not seized and as a result the store was closed for several hours. However, in its brief in this court Sequoia has abandoned not only its claim for damages but any claim based on the purpose for or the manner in which the warrant was executed; it has staked everything on persuading us that the warrant lacked particularity and probable cause. Stray remarks in oral argument will not revive abandoned claims. And should the defendants continue to harass Sequoia in the manner that its counsel alleges, the doors of the federal courts will be open to it.

Although the defendants did not ask the district court and have not asked us to abstain from deciding the constitutional issues in this case, we think we ought at least to consider the question whether we are obliged on our own initiative to consider abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Hicks v. Miranda,* 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975), the latter a case similar to the present case except involving a theater rather than a bookstore. As in *Hicks,* when Sequoia brought this suit to enjoin the use of the materials seized from it in any criminal or other proceedings against it and to

get the materials back, the state had a criminal proceeding pending against Sequoia's sales clerk in regard to the same allegedly obscene materials; and that proceeding might have been thwarted, or at least hindered, if Sequoia had obtained the equitable relief it sought in the present case. This is not certain: since the clerk presumably could not assert Sequoia's rights under the Fourth Amendment, the state presumably could make copies of the materials before returning them to Sequoia, and use those copies in its prosecution of the clerk. *Hicks* may therefore be distinguishable, because the full-length movie upon which the state had based its prosecution there could not easily be copied; also, the theater owner was trying to get the statute under which his employees were being prosecuted declared unconstitutional, an even more palpable interference with the prosecution than involved in seeking the return of the film.

Whether or not *Hicks* is distinguishable on these or other grounds, there is the anterior question whether abstention on the basis of the *Younger* doctrine (the doctrine applied in *Hicks*) is appropriate when no party asks for abstention. The question is difficult to answer categorically. Although failure to abstain does not deprive a federal court of its subject-matter jurisdiction, and although *Younger* abstention more than *Pullman* abstention (abstention in favor of state proceedings that may make a difficult federal constitutional question moot) is designed for the protection of a party (the state, or its officers) rather than for the protection of the federal courts themselves, the Supreme Court in *Schlesinger v. Councilman,* 420 U.S. 738, 743, 95 S.Ct. 1300, 1305, 43 L.Ed.2d 591 (1975), gave *Younger* itself as an example of a case where an appellate court reversed a judgment on the basis of an issue not raised in the trial court. But then in *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 480, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977), the Court held that the state could waive any rights it might have under *Younger* if it wanted to remain in federal court; and maybe silence should be construed as waiver, as implied in *Universal Amusement Co. v. Vance,* 587 F.2d 159, 163 n. 6 (5th Cir. 1978).

■ We do not think it is necessary, and think in fact that it would be imprudent, for us to hold that a federal court has no power in any circumstances to abstain on its own initiative on the basis of the *Younger* doctrine. It is sufficient for purposes of the present case to hold that, whether or not the district court might have been justified in abstaining on its own initiative, we are not required to abstain at this stage. Since Sequoia was denied relief below, affirmance can do no conceivable harm to the policy of *Younger;* can create no interference with the pending state prosecution. We therefore need not decide whether the district judge should or could have abstained on the authority of *Younger* or *Hicks,* notwithstanding the defendants' failure to ask him to abstain.

The judgment dismissing the complaint is AFFIRMED.