**STATE of Missouri, Respondent,**

v.

**EL DORADO MANAGEMENT CORPORATION, INC.,**
**Appellant.**

**No. 57729.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 6, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 19, 1990.

Application to Transfer Denied Feb. 7, 1991.

# 403

Dennis Joseph Myers, Alan G. Kimbrell, St. Louis, for appellant.

Steven Russell Ohmer, St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, El Dorado Management Corporation, Inc., appeals its jury conviction in

the Circuit Court for the City of St. Louis for the class A misdemeanor of promoting obscenity in the second degree, RSMo § 573.030 (1988), for which it was fined one thousand five hundred dollars ($1,500.00). We affirm.

In April of 1988, Andrew Hollins, a detective with the vice division of the St. Louis Police Department, became involved in an investigation of the appellant for its rental of possibly obscene video cassettes. In connection with this investigation, Detective Hollins rented ten videos from the appellant over a two month period. Each video was viewed in its entirety by Detective Hollins, copied and returned to the appellant.

On June 23, 1988, Detective Hollins prepared an application for a search warrant alleging that the appellant had certain video cassettes for rent to the public and that:

said video cassettes are obscene in that they depict, describe, or portray, verbally or pictorially, acts of sexual intercourse, in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, appeals to the prurient interest and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary artistic, political, or scientific value; or other sexual conduct such as masturbation, sodomy, buggery, fellatio, cunnilingus, bestiality or any other ultimate sexual act, normal or perverted, which are portrayed in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, appeals to the prurient interest and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary artistic, political, or scientific value and said video cassettes are proscribed by Section 573.-030 RSMo are as follows;

1. EROTICISM IN BLACK
2. LEAVE IT TO CLEAVAGE
3. THE BEST OF ANGEL KELLY (VOL. # 1)
4. QUICKSLIVER
5. SEX RING INTERNATIONAL
6. BOOBY PRIZE (VOL. # 2)
7. NATIONAL PORNOGRAPHIC (VOL. # 1)
8. SUPERHEAD
9. ANAL BABES
10. AFRODISIAC

AND ALL OTHER ITEMS CONTAINED IN AND ON THE PREMISES COMMONLY KNOWN AS 3442 Lindell Blvd., ST. LOUIS, MISSOURI, THAT DEPICTS SEXUAL CONDUCT AS FOLLOWS:

WHICH DEPICT, DESCRIBE, OR PORTRAY, VERBALLY OR PICTORIALLY, ACTS OF SEXUAL INTERCOURSE IN SUCH A WAY THAT THE AVERAGE PERSON, APPLYING CONTEMPORARY COMMUNITY STANDARDS WOULD FIND THAT THE MATTER, TAKEN AS A WHOLE, APPEALS TO THE PRURIENT INTEREST AND DEPICTS OR DESCRIBES, IN PATENTLY OFFENSIVE WAY, SEXUAL CONDUCT, IN A LEWD, LICENTIOUS, INDECENT, LASCIVIOUS, IMMORAL AND SCANDALOUS MANNER AND THAT A REASONABLE PERSON WOULD FIND THAT THE MATTER, TAKEN AS A WHOLE, LACKS SERIOUS LITERARY, ARTISTIC, POLITICAL, OR SCIENTIFIC VALUE: OR OTHER SEXUAL CONDUCT SUCH AS MASTURBATION, SODOMY, BUGGERY, FELLATIO, CUNNILINGUS, BEASTIALITY, OR ANY OTHER ULTIMATE SEXUAL ACT, NORMAL OR PERVERTED, WHICH ARE PORTRAYED IN SUCH A WAY THAT THE AVERAGE PERSON, APPLYING CONTEMPORARY COMMUNITY STANDARDS WOULD FIND THAT THE MATTER, TAKEN AS A WHOLE, APPEALS TO THE PRURIENT INTEREST AND DEPICTS OR DESCRIBES, IN A PATENTLY OFFENSIVE WAY,

SEXUAL CONDUCT IN A LEWD, LICENTIOUS, INDECENT, LASCIVIOUS, IMMORAL AND SCANDALOUS MANNER, TAKEN AS A WHOLE, LACKS SERIOUS LITERARY, ARTISTIC, POLITICAL, OR SCIENTIFIC VALUE

Detective Hollins also attached an affidavit to the above application stating that he had watched the ten named films and that each of them contained explicit scenes of sexual conduct. Detective Hollins then went on to state some of the conduct contained in each film.

The circuit court, after finding that there was probable cause to believe obscene material was being held by the appellant, issued a warrant ordering the police to seize:

[a]ny obscene material in violation of RSMo 573.030 being kept and/or displayed upon the premises, which depict sexual conduct and which are more particularly described in the affidavit; and video cassette movies which depict, describe or portray, verbally or pictorially, acts of sexual intercourse in such a way that the average person, applying contemporary community standards would find that the matter, taken as a whole, appeals to the prurient interest and depicts or describes, in patently offensive way, sexual conduct, in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political or scientific value: or other sexual conduct such as masturbation, sodomy, buggery, fellatio, cunnilingus, bestiality, or any other ultimate sexual act, normal or perverted, which are portrayed in such a way that the average person, applying contemporary community standards would find that the mater (sic), taken as a whole, appeals to the prurient interest and depicts or describes, in a patently offensive way, sexual conduct in a lewd, licentious, indecent, lascivious, immoral and scandalous manner and that a reasonable person would find that the matter, taken as a whole, lacks serious literary, artistic, political, or scientific value ...

The search warrant was issued and executed on June 23, 1988.

On July 26, 1988, an information was filed in the Circuit Court for the City of St. Louis charging appellant and others with promoting pornography in the second degree. The trial on these charges began on October 30, 1989, and concluded on November 3, 1989. On November 3, 1989, the jury returned its verdict finding appellant guilty as charged. This appeal followed.

Appellant raises numerous points of error. Several of these points include a host of subpoints. For the sake of clarity, each main point will be separated into different sections of this opinion.

I

Appellant's first set of contentions allege that the trial court committed varying forms of instructional error. Each claim revolves around the verdict directing instruction which stated:

[i]f you find and believe from the evidence beyond a reasonable doubt:

First, that on June 7, 1988, in the City of St. Louis, State of Missouri, an employee of the defendant ElDorado Management, Inc., D/B/A—Rental Entertainment, while acting within the scope of his employment and in behalf of the Corporation, delivered certain material for pecuniary gain, consisting of a videotape entitled "ANAL BABES", and

Second, that such material was obscene, and

Third, that defendant ElDorado Management, Inc., D/B/A—Rental Entertainment at the time knew of the content and character of the material, .

then you will find the defendant ElDorado Management, Inc., D/B/A—Rental Entertainment guilty under Count XVI of promoting obscenity in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant ElDorado Management, Inc., D/B/A—Rental Entertainment not guilty of that offense.

As used in this instruction, material is "obscene" if considered as a whole:

(a) The average person, applying contemporary community standards, would find the material's predominant appeal is to prurient interest in sex; and

(b) The average person, applying contemporary community standards, would find the material depicts or describes sexual conduct in a patently offensive way; and

(c) A reasonable person would find that the material lacks serious literary, artistic, political, or scientific value.

In determining whether any material is obscene, it shall be judged with reference to its impact on ordinary adults.

As used in this instruction, the term "sexual conduct" means actual or simulated, normal or perverted, acts of human masturbation or physical contact with any latent objects in an act of apparent sexual stimulation or gratification.

If you do find the defendant ElDorado Management, Inc., D/B/A—Rental Entertainment guilty under Count XVI of promoting obscenity in the second degree, you will assess and declare the punishment at a fine, the amount to be determined by the Court.

The maximum fine which the Court may impose is $5,000.00,

■ Appellant initially claims that the above instruction fatally varied from the charging information in that the appellant was charged with promoting pornography in the second degree, but the verdict director required a finding of obscenity. We disagree.

■ Appellant was charged with violating RSMo § 573.030 (1988) in accordance with MACH–CR 27.04, promoting pornography second degree. Since MACH–CR 27.04 was written, however, the legislature has modified RSMo § 573.030. Included in this modification was a renaming of the offense of "promoting pornography in the second degree" to "promoting obscenity in the second degree." For purposes of the charge made against the appellant, however, the statute has remained, in essence,

the same. A variance is not fatal unless it is material to the merits of the case and prejudicial to the defense of the defendant. *Conley v. State,* 765 S.W.2d 332, 333 (Mo. App., E.D.1989). Neither situation exists here. Point denied.

■ Appellant next contends that the instruction given was erroneous in that the instruction's definition of obscenity varied from the statutory definition. The statutory definition of obscenity is given in § 573.010(8) (1988):

"Obscene", any material or performance is obscene if:

(a) Applying contemporary community standards, its predominant appeal is to prurient interest in sex; and

(b) Taken as a whole with the average person, applying contemporary community standards, it depicts or describes sexual conduct in a patently offensive way; and

(c) Taken as a whole, it lacks serious literary, artistic, political or scientific value;

The instruction, as given, required the jury to decide whether the "average person" applying contemporary community standards would find the materials' predominant appeal is to prurient interest in sex. The appellant contends that by using the term "average person" in part (a) of the definition, the court "watered down the burden the. legislature placed upon the State to prove obscenity."

Initially, we note that the M.A.I. for RSMo § 573.030 is found in MAI–CR3d at 327.06. Where an MAI exists for a given offense, it must be given to the exclusion of any other instruction. Rule 28.02(c); *State v. Allen,* 781 S.W.2d 240, 241 (Mo. App., S.D.1989). We note, however, that the definition of obscenity has been materially altered since the MAI for § 573.030 was promulgated and the court could, thus, no longer rely on the MAI definition as being an accurate statement of the law. The court was, therefore, left to modify the MAI to come into compliance with the changes in the obscenity statutes. The Notes on Use can prove to be invaluable

under these circumstances. The Second Note on Use under MAI–CR3d 327.06 states "the definition of pornographic is from section 573.010(9) RSMo 1986." MAI–CR3d 327.06 Notes on Use 2(b). As noted above, RSMo § 573.030 now concerns the crime of obscenity in the second degree—not pornography in the second degree. When the legislature amended § 573.030, it also amended § 573.010 to make the sections consistent with each other. As part of this amendment, the legislature deleted the definition of "pornographic" and replaced it with the definition of "obscenity." The trial court should have referred to § 573.010(8) and replaced the MAI–CR3d 327.06 definition of pornographic with the RSMo § 573.010(8) definition of obscene.

This does not mean, however, that the error committed by the trial court mandates reversal. Deviation from even a clear and unchanged MAI, though technically error, must still have its prejudicial effect, if any, judicially determined. Rule 28.02(f).

In the present case, the trial court appeared to follow the definition of obscenity provided by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) as modified by *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). The instruction, as given, is substantially similar to that provided by the statutory definition and we do not find that the inclusion of "average person" watered down the burden of the State or prejudiced the defendant in any manner. Point denied.

■ Appellant next contends that the instruction is fatally defective in that the instruction contains no scienter requirement regarding whether or not the material is obscene. Recognizing the failed attempts of others to graft a requirement onto § 573.030 that defendants *knew* the material was obscene, *State v. Schamma*, 659 S.W.2d 589, 592 (Mo.App., E.D.1983), the appellant attempts a variation on the same theme—that the appellant must have been *reckless* as to whether or not the material was obscene.

RSMo § 573.030 requires scienter only to the extent that the offending party knew the content or character of the material being distributed. *State v. Smith*, 422 S.W.2d 50, 62 (Mo. banc 1967); *State v. Schamma*, 659 S.W.2d 589, 592 (Mo.App., E.D.1983). To read the statute as appellant wishes would put the acquittal of the defendant in his own mouth. *Smith*, 422 S.W.2d at 62. We will not do so. Point denied.

## II

■ Appellant next contends that the trial court erred in sustaining the State's objection to appellant's closing argument that the State had produced no evidence as to what community standards were. During the trial, the defense introduced the testimony of several witnesses who testified, as members of the public, that they accepted the rights of adults over the age of 21 to rent appellant's videos for use in the privacy of their own home. The State produced no evidence on this issue.

During appellant's closing argument, the following occurred:

MR. MYERS: And that law says, ladies and gentlemen, you've got to determine obscene. And the way you do that, according to the law, is by applying contemporary community standards. Now, the prosecution has come in and told you that what that means is it's your opinion, not each one of you individually, but your twelve collective opinions ... moreover, he asked you to do that without one single shred of evidence as to what the community standards are.

MR. OHMER: Your Honor, I'm going to object. There's no burden on the State to present evidence on that issue.

THE COURT: Sustained.

■ The trial court has broad discretion in determining the propriety of argument and appellate courts will not interfere absent a clear abuse of that discretion and prejudice to the appellant. *State v. Allen*, 702 S.W.2d 530, 533 (Mo.App., E.D.1985). Even were this court to assume that the trial court abused its discretion in sustain-

ing the State's objection, we could not find prejudice in this case.

■ Shortly after the above quoted exchange occurred, the appellant's attorney again asked:

MR. MYERS: You must ask yourself why didn't the State put on any evidence one way or the other about how individual members of the community might have felt about this.

MR. OHMER: Your Honor, I'm going to object again. There's no burden on the State to present that evidence.

THE COURT: It's argument.

MR. OHMER: All right.

The appellant was, thus, able to make the same argument to the jury that the court earlier had not permitted. Where a party is permitted to make the same argument he was otherwise prevented from making, any error is harmless. *Allen*, 702 S.W.2d at 534. Point denied.

### III

Appellant next provides this court with a plethora of arguments alleging error in the trial court's overruling of appellant's motion to quash the search warrant.

■ Appellant first claims that the search warrant was issued in violation of RSMo § 542.281.3 (1987) in that it failed to "designate precisely by title, or otherwise, each item to be searched for and seized." RSMo § 542.281.3 (1987). Because there is no case law interpreting this section, we look first to judicial interpretation of the particularity requirements of the Fourth Amendment.

The seizure of materials because they are alleged to be obscene, poses problems not raised by warrants to seize such things as "gambling implements" and "intoxicating liquors." *Marcus v. Property Search Warrant*, 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961). Warrants to seize obscene materials necessarily implicate questions of whether the procedures leading to their issuance and surrounding their execution were adequate to avoid suppression of constitutionally protected speech. *Id.* As such, courts have held

that warrants to seize obscene material must provide the executing officers a guide by which to exercise informed discretion. *Id.* at 732, 81 S.Ct. at 1716. It is for this reason that words such as "obscene, erotic and pornographic materials" by themselves are too broad—they allow the executing officers themselves to determine what is obscene and what is pornographic. *Ross v. State*, 475 A.2d 481, 485 (Md.App.1984). See also *State v. Hall*, 293 S.C. 331, 360 S.E.2d 323, 324 (1987) ("additional and like material" is overbroad).

The case at hand is not like those in which warrants were deemed to be overbroad. Indeed, in *Sequoia Books, Inc. v. McDonald*, 725 F.2d 1091 (7th Cir.1984), the 7th Circuit was presented with a warrant very similar to that presented here. Judge Posner, writing for the court, stated:

By confining the officers to seizing materials that contained depictions ... of sexual intercourse and the variance thereof described in the warrant, the warrant satisfied the requirement of particular description ... *Sequoia*, 725 F.2d at 1093.

Like the warrant in *Sequoia*, the warrant here informed police officers what was likely to be obscene by the court's reference to various sexual acts. Thus the instant warrant fits within the particularity requirement of the Fourth Amendment.

■ We also find the warrant to be sufficient under the terms of RSMo § 542.281 which requires that the warrant "shall designate precisely by title, *or otherwise*, each item to be searched for and seized." The appellant would apparently have us hold that all types of X-rated films must be designated by title if the search warrant is to stand. This ignores the wording of the statute which allows designation by title, *or otherwise* and also ignores the reality of the situation. Under such a reading, the officers would be required to either rent every video contained in the store or to stand, pen and paper in hand, writing down the titles of those tapes they deem to be possibly obscene, either of which would certainly arouse suspicion and result in denial of entry. Point denied.

Appellant also claims that the application for the warrant is insufficient because it only states conclusions and not facts sufficient to show probable cause. We disagree.

■ An application for a search warrant authorizing the seizure of materials presumptively protected by the First Amendment is evaluated under the same standard of probable cause used to review warrant applications generally. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 875, 106 S.Ct. 1610, 1615, 89 L.Ed.2d 871 (1986). In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) this standard was set out:

> '[T]he term "probable cause," ... means less than evidence which would justify condemnation.... It imports a seizure made under circumstances which warrant suspicion.' ... Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision.

> \*   \*   \*   \*   \*   \*

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing,]' ... that probable cause existed.

*Id.* at 235, 238–39, 103 S.Ct. at 2330, 2332–33. (citations omitted)

■ Applying this standard to the application, we believe that there were sufficient facts to support probable cause. The affidavit accompanying the application contained descriptions of the ten films reviewed and copied by Detective Hollins. The application stated that the films contained various forms of sexual conduct and, finally, the Detective attached copies of the

covers from the ten viewed videos—some of which were quite explicit.[1] Point denied.

■ Appellant next contends that there were insufficient facts to support the seizure of any films other than those contained in Detective Hollins affidavit. Once again, probable cause is determined under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). All that is required under this standard is that the facts support a probability that contraband will exist in the place to be searched. *Id.* at 238, 103 S.Ct. at 2332. The affidavit accompanying the application alleged that the first floor of appellant's business is a large room "containing racks of video movies which are for sale or rent. Several of the covers containing video movies on those rackss [sic] depicts explicit scenes of sexual conduct, including males and females engaging in sexual intercourse, cunnilingus, fellatio, and masturbation." While not a model for future use, this, in conjunction with the more detailed description of the ten rented videos contained in the affidavit and the description of the films contained in the application, was sufficient to provide a probability that additional films, similar to those viewed, existed at the appellant's business. Point denied.

■ Appellant finally contends that the warrant was invalid because the judge "failed to make a determination that there was probable cause to believe that any item to be seized was obscene." The appellant here is really arguing semantics. He claims that a general finding as made by the trial court, that obscene materials were being kept and displayed, is insufficient and that the court has to find probable cause to believe that each film to be seized was obscene. While the court had to find probable cause to believe that the films to be seized were obscene, RSMo § 542.281.4 (1987), the court is not required to itemize. A general statement will suffice. Point denied.

---

**1.** Much to the dismay of law students throughout the country, we see no need to include

copies of these covers in this opinion.

## IV

Appellant's next point claims error when the trial court initially refused to declare a mistrial when the jury was deadlocked, gave the hammer instruction to the jury and then finally accepted the verdict after the court had already declared a mistrial. The background of this rather bizarre occurrence is as follows.

The admission of evidence in this case was concluded on the morning of November 2, 1989. The trial judge then recessed until 10:30 the next morning at which time the instructions were read and the parties presented their closing argument. At 3:00 p.m., the jury began their deliberations. At 4:35 p.m., the jury submitted the following question to the court: "Do we have to stay today until we reach a verdict or can we return Monday?" The court asked the jury to kindly continue their deliberations. Later, at 6:30 p.m., the court was informed by the jury foreman that the jury was "hopelessly tied up." The court denied the appellant's motion for a mistrial at that time and sent several questions to the jury—one for each count in the information—regarding whether or not further deliberations would be fruitful. At 7:20 p.m., the responses to the question were received with the jury indicating that they felt further deliberations would not help on any of the counts. Again the appellant made a motion for a mistrial which was denied. Instead, the court read the jury the Hammer instruction:

> You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he does not believe beyond a reasonable doubt to be true.

Finally, at 9:54 p.m., after the jury again indicated that further deliberations would not be fruitful, the following occurred:

THE COURT: All right. Very well. Is there a motion?

MR. MYERS: Yes, Your Honor, I would like to make a motion for a mistrial.

THE COURT: Very well. Anything further? Very well. The motion will be granted at this time. The matter be passed over for setting to a date to be set by the Court in consultation with the parties.

I want to thank both members of the bar for the able job that you both did in your presentation. Ladies and gentlemen, the Court appreciates how sincerely you've tried to reach a conclusion in this case and I know it's frustrating to you not to be able to reach a conclusion. But, nonetheless, you have done your duty as you've seen fit to do it and there is no—no one here who should utter criticism in any way of the fact that you couldn't reach a verdict. These things happen from time to time. So I want you to understand that each and every one of us appreciates—all the judges of the court and the attorneys appreciate your efforts.

... You'll be receiving a check in the mail for your—yes, Mr. Fraizer?

MR. FRAIZER: Just in case it would have any bearing, in our working we did reach a verdict on one count but we were unable to reach any verdict on any of the others.

THE COURT: I wasn't aware of that.

MR. FRAIZER: I'm sorry, I'm sorry that I didn't make that clear.

THE COURT: Do you have the verdict with you?

MR. FRAIZER: Yes, sir.

THE COURT: All right. May we see it, please.

MR. FRAIZER: That is the only verdict we were able to reach.

The verdict of guilty was then read and accepted by the court. We will address each of appellant's allegations of error in the order in which they appeared at trial.

Appellant first claims that the trial court erred in failing to declare a mistrial when the jury indicated it was tied up. This same issue was considered in *State v. Anderson*, 698 S.W.2d 849 (Mo. banc 1985). In *Anderson*, the jury deliberated for four hours before informing the trial court that they had reached a verdict on one count but were hung on two others. The trial court questioned the jury foreman to determine how the jury was deadlocked and read them the hammer instruction. *Id.* at 852. More than an hour later, the jury repeated it was still hung. *Id.* The trial court allowed them to deliberate for another hour before accepting a verdict of guilty on *two* counts and a verdict of not guilty on the third. *Id.* The appellant then claimed that the trial court had erred in failing to declare a mistrial when informed of the hopeless deadlock and, thereby, coercing a verdict on the second count. *Id.*

The Supreme Court, in reviewing this claim, stated:

[7] In reviewing defendant's final point, we are mindful that the declaration of a mistrial rests largely in the discretion of the trial court because, by virtue of having had the opportunity to observe the incident precipitating the request for mistrial, the trial court is in a better position than any appellate court to determine the prejudicial effect, if any, that the incident had on the jury....

[8] The length of time which a jury is allowed to deliberate as well as the determination of whether to read MAI–CR2d 1.10 [the hammer instruction] to the jury are matters committed to the sound discretion of the trial court.... In order to establish an abuse of that discretion it must be shown that, based on the record of what was said and done at the time of trial, the verdict of the jury was coerced.

*Id.* at 852–53 (citations omitted).

The trial in the present case took a total of five days and involved an issue, what is and is not obscene, that can be expected to involve a great deal of debate and argument. In addition, at the time the trial court was last informed that the jury was deadlocked and gave the hammer instruction, the jury had only been deliberating for four and one-half hours. "The trial court was not compelled to accept at face value the jury's contention that it was hopelessly hung." *Anderson*, 698 S.W.2d at 853. Point denied.

Appellant next contends that the trial court erred in giving the hammer instruction after the jury reported it was evenly split and claims that the instruction led to a coerced verdict. We disagree.

As stated above, the length of time that a jury is allowed to deliberate and the determination of whether to read the hammer instruction rests within the sound discretion of the trial court. *Anderson*, 698 S.W.2d at 853. "Being told by a juror that further deliberations would not be helpful in resolving a deadlock does not preclude the trial judge from reading the hammer instruction ..." *Id.* Finally, the considerations made above must apply with equal force in considering this point on appeal. We do not find an abuse of discretion or coercion here. Point denied.

Appellant finally contends that the trial court could not accept the verdict of the jury once it had declared a mistrial. We have scoured the law books in vain to find a Missouri case quite as unusual as the one presented here. Lacking that, we turn to our sister states for help. In *Gardner v. Common Wealth of Virginia*, 3 Va.App. 418, 350 S.E.2d 229 (1986), the jury returned a verdict of guilty. When polled, however, one of the jurors disagreed with the verdict. The trial court declared a mistrial and excused the jury. Before the jury could leave the courtroom, however, the prosecuting attorney asked to address the court. The jury was ordered back to the jury room and the prosecutor convinced the trial court to "Allen" (hammer) the jury. The jury was then sent back to deliberate further and convicted the defendant. *Id.* 350 S.E.2d at 232.

The court there held that there was no error in reassembling the jury where the jury never left the presence of the court as the matter was "still in the breast of the court." *Id.* We find this to be persuasive precedent and hold that, as the jury, in our

**412**

case, did not leave the courtroom, there is no error in reversing the declaration of a mistrial and accepting the jury's verdict.

## V

Appellant's final bone of contention is that the trial court erred in permitting the State to introduce evidence that one of the defendants, Paul Haukap, was arrested in 1986 for promoting pornography.

In *State v. McKinney*, 718 S.W.2d 583 (Mo.App., E.D.1986), this court held that evidence of a prior arrest for promoting pornography was relevant to indicate a defendant's knowledge of the content and character of a magazine carried by a book store. This case is directly on point to the one in hand. Appellant urges us to reconsider our holding in *McKinney*. We decline to do so. Point denied.

Affirmed.

CRIST and SIMON, JJ., concur.