**SUPREME VIDEO, INC., Plaintiff,**

v.

**Steven SCHAUZ, et al., Defendants.**

**No. 91–C–773.**

United States District Court,
E.D. Wisconsin.

May 14, 1996.

Jeff Scott Olson, Olson Law Office, Madison, WI, for Plaintiff.

Gregg T. Heidenreich, Stilp, Cotton & Wells, Milwaukee, WI, for Defendants.

## DECISION AND ORDER

RANDA, District Judge.

This case is before the Court on the parties' cross-motions for summary judgment after remand from the 7th Circuit Court of

Appeals. The facts remain as set forth in the Court's prior decision in the matter. *See generally, Supreme Video, Inc. v. Schauz,* 808 F.Supp. 1380 (E.D.Wis.1992) ("*Supreme Video I*"). By way of summary, defendants purchased three videotapes as part of a criminal investigation of a video store owned by the plaintiff, Supreme Video, Inc. ("Supreme Video"). The three videos bore the titles *Alex Derenzys' Juicy Lucy, Wall to Wall the Way You Like It* and *Home Movie Productions. Juicy Lucy* was a single-issue, non-serial work, and the other two videos were individual volumes within two multi-volume sets of videos bearing the serial titles *Wall to Wall the Way You Like It* and *Home Movie Productions.* A detailed description of these three videos in an affidavit submitted to a state court judge provided the basis for the issuance of a search warrant for the video store in question. The warrant authorized defendants to seize all "copies of the cassettes *Wall to Wall the Way You Like It, Alex Derenzy's Juicy Lucy* and *Home Movie Productions....*" When executing the search warrant, defendant Steven Schauz ("Schauz") informed the employee on duty that he, and the officers assisting him, intended to seize all of the videos within the two series entitled *Wall to Wall the Way You Like It* and *Home Movie Productions,* not just the two videos within those series which Schauz had purchased and reviewed.

Supreme Video filed this civil rights suit on July 15, 1992, claiming that Schauz and defendant James Thome ("Thome"), both City of Oshkosh police officers, violated Supreme Video's constitutional rights by conducting an illegal search and seizure at its store in Oshkosh, Wisconsin. Supreme Video sued Schauz and Thome in their personal capacities seeking compensatory and punitive damages, and in their official capacities seeking injunctive and declaratory relief. This Court held that Schauz and Thome were protected by the qualified immunity doctrine from any personal liability and that Supreme Video's failure to pursue available state procedures for securing the return of the videos at issue prevented it from seeking injunctive and declaratory relief. *See generally, Supreme Video I.* The 7th Circuit affirmed the Court's ruling on the qualified immunity is-

sues, but found that the Court failed to properly address the claims for equitable relief. The case was remanded for reconsideration of those claims. *See generally, Supreme Video, Inc. v. Schauz,* 15 F.3d 1435 (7th Cir.1994) ("*Supreme Video II*"). With regard to the claim for injunctive relief, the 7th Circuit framed the issues on remand as follows:

> Supreme Video is entitled to the return of its seized movies if: (1) the police seized more than single copies; (2) the seizure was not for the purpose of preserving the films as evidence in a criminal proceeding; (3) the seizure was not based on probable cause; or (4) there was not a prompt adversarial hearing after Supreme Video requested one.

*Supreme Video II,* 15 F.3d at 1442. The 7th Circuit ruled out relief based on points 1, 2 and 4, but specifically directed the Court to decide the "probable cause" issue on remand. *Id.* at 1442–43.

The claim for declaratory relief, in part like the claim for injunctive relief, requires a finding that the defendants "executed an unconstitutional search warrant" (due, for example, to the lack of "probable cause"). In addition, the claim requires a finding that declaratory relief is otherwise appropriate. The parties agreed that these remaining claims could be decided on summary judgment.

Central to both claims is the question of whether the search warrant at issue was constitutionally valid. Supreme Video attacks the warrant on two fronts, using the same approach it used before the 7th Circuit. First, Supreme Video argues that the warrant failed to "particularly describe" the things to be seized, insofar as the warrant only described the seizure of all "copies" of the two multi-volume video series and not all "volumes" of the same. Second, Supreme Video argues that there was no "probable cause" to seize any videotapes in addition to those which were actually reviewed by the defendants and summarized for the magistrate. The Court rejects both arguments.

## I. DESCRIPTIVE PARTICULARITY

On this issue, Supreme Video focuses, as it did on appeal, on the fact that the warrant called for the seizure of all "copies of the videotapes *Wall to Wall the Way You Like It* . . . and *Home Movie Productions* ", the critical word being the term *"copies"*. Supreme Video argues that use of the word "copies", instead of "volumes", failed to particularly describe the seizure of the entire multi-volume *Home Movie* and *Wall to Wall* video sets. Moreover, Supreme Video argues that the 7th Circuit already decided the issue by virtue of language in its opinion directing police officers to use the term "volumes" in all future warrants seeking the seizure of a multi-volume video series:

> . . . we . . . agree with the district court that the defendants should be immune from civil liability. We should note, however, that the term "volumes" is grammatically correct when referring to movies within a series, and although Schauz' usage was objectively reasonable at the time, after the publication of this opinion police officers should confine future usages of the terms "copies" and "volumes" in affidavits supporting search warrants to their more traditional dictionary definitions.

*Supreme Video II*, 15 F.3d at 1442. Supreme Video fails to acknowledge, however, that the foregoing language was contained in the 7th Circuit's discussion of the "probable cause" issue, not the "descriptive particularity" issue. In fact, the 7th Circuit stated that, even assuming the terms "copies" and "volumes" were distinct concepts, they were not "central" to the particularity issue and only "bec[a]me[ ] relevant" in the context of deciding whether or not the defendants intentionally or recklessly misrepresented material information in their application for a search warrant. *Id.* at 1439, 1441. That issue, though related, is separate from the particularity issue. Therefore, the Court does not read the 7th Circuit's opinion as requiring a finding that the warrant failed to particularly describe the things to be seized.

The Court approaches the "descriptive particularity" issue for purposes of injunctive relief in much the same manner as the 7th Circuit approached the issue for purposes of qualified immunity. That is, the question is not whether the term "copies" particularly described the seizure of all "volumes" of the *Home Movie* and *Wall to Wall* video sets. Rather, the question is whether the warrant's general references to the series titles *Wall to Wall the Way You Like It* and *Home Movie Productions,* without specifying any individual volumes within those two series, particularly describes the seizure of each volume in the series. The 7th Circuit found that such an interpretation was reasonable and would not expose a police officer to personal liability:

> An objectively reasonable officer could have reasoned as follows: (1) the warrant authorizes the seizure of *Wall to Wall the Way You Like It* and *Home Movie Productions;* (2) the only movies with those titles each are followed by a volume number; so therefore (3) *Wall to Wall the Way You Like It* and *Home Movie Productions* each refers to the entire series, allowing seizure of all movies within each series.

*Supreme Video II*, 15 F.3d at 1440. Of course, a "reasonable interpretation" of the law for purposes of a qualified immunity defense to a 4th Amendment claim may not prove to be the established law for purposes of assessing a 4th Amendment violation. However, the 7th Circuit's finding that "an objectively reasonable officer could have reasoned" the way Officer Schauz did in this case cannot be ignored. Such a holding goes a long way towards establishing what is sufficient and what is practical under the unique circumstances of a particular case. In addition, this interpretation of the language makes the most sense. No particular volume within either series is referenced in the warrant, so there simply was no basis for the officer to seize only one volume and no others, as argued by Supreme Video. The only reasonable interpretation was to seize the entire series.[1] Supporting the Court's deci-

---

1. The point is perhaps made clear when one considers an alternative interpretation proffered by Supreme Video: Since no individual movie with the title *Wall to Wall the Way You Like It* or *Home Movie Productions* exists (because the movies all have volume numbers appended to those

sion is the 7th Circuit's decision in *Sequoia Books, Inc. v. McDonald,* 725 F.2d 1091 (7th Cir.1984), *cert. denied,* 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984), which stands for the proposition that a warrant need not list the actual title or issue of every book, magazine or movie to be seized so long as the warrant contained other language which sufficiently described and/or limited what was to be seized. Here, a reference to the generic titles of the two series provided the requisite particularity for defendants to seize the volumes found under those titles.[2]

## II. PROBABLE CAUSE

■ Finding that the warrant adequately described the seizure of all the different volumes within each video series, the question becomes whether the magistrate had probable cause to issue a warrant authorizing the seizure of all these volumes despite the fact that only one volume from each series had been reviewed. The Court finds that he did. As it did in its first decision on the qualified immunity issue, the Court relies upon the appellate court decisions in *In re Search of Kitty's East,* 905 F.2d 1367 (10th Cir.1990) and *Sequoia Books, Inc. v. McDonald,* 725 F.2d 1091 (7th Cir.1984), discussed *supra.*

In *Kitty's East,* the executing officers had reviewed 18 videotapes prior to seizure, the contents of which were detailed in a probable cause affidavit submitted in support of a warrant request. *Kitty's East,* 905 F.2d at 1372. The affidavit also described the appearance of the videotapes, the location of the display case where they were stored, their cost, and the precise definition of the aberrant sexual subjects highlighted in the videos. *Id.* Based on that affidavit, the magistrate issued a warrant authorizing the seizure of the 18 videotapes detailed in the affidavit, *plus* any other videotapes of similar appearance, proximity and subject matter. *Id.* Like Supreme Video, the owner alleged that the warrant and seizure were unconstitutional because seizing videotapes in addition to those specifically reviewed and summarized prior to seizure violates the requirement that "a neutral judicial officer ... focus searchingly on the question of obscenity". *Id.* The 10th Circuit disagreed:

> Regarding whether the magistrate was able to focus searchingly enough on the obscenity of the unnamed videotapes, we observe that the magistrate was presented with affidavits describing eighteen videotapes, each of which was deemed by him to be obscene.... *We do not think it unreasonable for the magistrate to conclude, based on the descriptions of the eighteen named videotapes, that there was probable cause to believe that other videotapes identical in appearance to those reviewed, available in the same display area, and having the same subject matter, were equally obscene.* Although ordinarily it would be preferable to *identify the videotapes by name* and include in the affidavit descriptions of the specific contents of each videotape, under the circumstances of this case we do not deem the failure to do so

titles), "the warrant authorized the seizure of none of the individual volumes" within either series. (Plaintiff's Brief in Opposition at 8–9.) Of course, no one would obtain, issue or execute a search warrant which calls for nothing to be seized. Thus, because no specific volume was identified in the warrant, the only reasonable interpretation is that each entire series was to be seized.

**2.** Supreme Video argues that its particularity challenge is "buttressed by the fact that Magistrate Crane was not trying to describe movie series, . . . ." (Plaintiff's Brief in Opposition at 8.) Rather, Supreme Video argues, Magistrate Crane must have intended only the seizure of individual movies. What the Magistrate actually intended is not the precise issue, but in any event, Supreme Video's position is contradicted by language in the 7th Circuit's decision on appeal:

From a legalistic perspective, *the magistrate judge must have believed that the word "copies" in the warrant meant different volumes within a series.* When an obscenity determination has not taken place before the seizure of a movie, the police may seize only one videocassette of each different movie, so long as they are seizing the movie or movies for the purpose of preserving them as evidence in a criminal proceeding and so long as the seizure is based on probable cause. *Fort Wayne Books v. Indiana,* 489 U.S. 46, 63, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989). In this case, a prior obscenity determination had not yet taken place. Thus, *a cold examination of the warrant would require the conclusion that "copies" really meant "volumes" despite the dictionary definitions of the words.*
*Supreme Video II,* 15 F.3d at 1442, n. 8. (Emphasis supplied.)

constitutionally fatal, particularly given that this was a seizure to secure evidence and not a seizure for the purposes of suppressing or destroying the allegedly obscene material.

*Id.* at 1373. (Emphasis supplied.)

In *Sequoia*, the plaintiff filed a § 1983 action for damages arising out of the seizure of several hundred pornographic magazines, movies and videotapes. Based upon an affidavit detailing the contents of nine (9) magazines which the police had read prior to the seizure, the magistrate issued a warrant authorizing the seizure of those specific magazines, and also any other "[m]agazines, movies and video tapes" which contained depictions of various specific sexual activities particularly described in the warrant. *Sequoia*, 725 F.2d at 1093. The plaintiff argued that the warrant was unconstitutional because, at least with respect to items that had not been reviewed prior to the search, the warrant left the police too much discretion to decide which additional items were to be seized. *Id.* The 7th Circuit rejected this argument. Although Judge Posner's decision focused on the "particularity" issue, rather than "probable cause", his language provides a helpful reminder of the practicalities surrounding the seizure of obscene materials:

> There was, it is true, a possibility that photographs of sexual acts might be redeemed by aesthetic or other values, and hence that the officers might seize constitutionally protected materials. But the possibility was slight. And it must be remembered that seizure under a warrant is not destruction (a distinction stressed in *Heller v. New York*, supra, 413 U.S. [483] at 488–93, 93 S.Ct. [2789] at 2792–95 [37 L.Ed.2d 745 (1973) ] ); *it is temporary removal from the owner's possession*; the state cannot destroy a magazine as obscene without proving that its prurient character is unredeemed by artistic or other socially valuable properties. *The slight possibility of a temporary suppression of constitutionally protected sex magazines is not enough to invalidate the warrant under the Fourth Amendment.* Nor would it be feasible to eliminate even this slight possibility by requiring that the warrant name the particular issues of the particular magazines to be seized. The defendant officers would have had to buy every issue of every magazine that they thought obscene—not just the nine magazines that they described to the magistrate. But their attempts to do so would have aroused Sequoia's suspicions, and it would have refused to sell to them. Or if the officers had reason to believe that Sequoia was warehousing obscene magazines somewhere, under Sequoia's view they could not search the warehouse unless they happened to know the names and dates of particular magazines, and those would be the only items they could seize.

*Id.* at 1093–94. (Emphasis supplied.)

In both *Kitty's East* and *Sequoia*, warrants were held constitutionally valid despite the fact that, like the warrant in this case, they specified the seizure of items which had not been reviewed and summarized for the magistrate. Supreme Video argues, however, that "both ... cases ... approved seizure of unviewed and undescribed items *on the basis of whether or not they depicted specifically enumerated acts.*" (Plaintiff's Brief in Opposition at 11; emphasis supplied.) Because the *"enumerated acts"* were clearly obscene, there would be probable cause to believe that any item depicting those acts was obscene and therefore subject to seizure. Here, the warrant *did not* limit the seizure of unreviewed videotapes to those tapes depicting certain specified sexual acts deemed to be clearly obscene. The only limit was that the videotape had to be a part of the *Home Movie* or *Wall to Wall* video series. Thus, Supreme Video argues, *Kitty's East* and *Sequoia* are inapposite.

■ The Court disagrees. Probable cause may be found or based on any information that reasonably convinces a magistrate that unreviewed items are probably obscene. When authorizing the seizure of unreviewed videotapes in addition to those reviewed and summarized before the magistrate, the Court is not limited to only considering whether the unreviewed videotapes are connected to the others by the depiction of specific sexual acts. There may be other information avail-

able to the magistrate that establishes the requisite probable cause. The central holding in *Sequoia* and *Kitty's East* is that a magistrate may authorize the seizure of First Amendment materials not previously reviewed and summarized if there is information which gives rise to a "substantial chance" that the materials are obscene, *i.e.*, if there is probable cause. *Multi–Media Distributing Co. Inc. v. United States*, 836 F.Supp. 606, 612 (N.D.Ind.1993), quoting *New York v. P.J. Video*, 475 U.S. 868, 877–78, 106 S.Ct. 1610, 1616, 89 L.Ed.2d 871 (1986). In *Sequoia*, identical subject matter was a sufficient basis for seizing the materials. In *Kitty's East*, similarity of appearance, location and subject matter was a sufficient basis for probable cause. In *Multi–Media*, probable cause was based on extremely short "previews" of the unreviewed videos, some of which lasted no longer than 5 to 10 seconds. The point is, whether or not probable cause exists is decided on a case-by-case basis, and "[b]ecause of the kaleidoscopic myriad that goes into the probable cause mix 'seldom does a decision in one case handily dispose of the next.'" *United States v. Davis*, 458 F.2d 819, 821 (D.C.Cir.1972), quoting *Hinton v. United States*, 424 F.2d 876, 879 (1969).

■ Here, the reviewed videotapes within each series showed unrelenting multiple party acts of fellatio, cunnilingus, vaginal intercourse, insertion of prosthetic devices into vaginal and anal areas, insertion of tongues into anal openings, male/female masturbation, and excretion of semen onto various parts of another's body. Indeed, based on the narrative, it is clear that the only purpose in making the tapes at issue was to create a product that displayed such activities in their most raw and gratuitous form. Such material is clearly obscene, and Supreme Video has never argued to the contrary. Instead, Supreme Video argues that the magistrate had little basis upon which to conclude that the other volumes within each series *probably* contained more of the same. Without a doubt the opposite is true. All of the videotapes were marketed as single vol-

umes within a continuing series under the same title. There is an obvious reason for this. The manufacturers of these tapes are trying to develop commercial goodwill through the use of name recognition. By using a common title for each volume within each series, they are trying to instill in the consumer's mind a certain confidence in the consistency of the product's quality and character. They are telling their customers, "If you liked what you saw in *Wall to Wall—Volume 1*, you'll find more of the same throughout the *Wall to Wall* series." That is the very definition·of a "series". A "series" is "a group of things *of the same class* coming one after the other in succession." *American Heritage Dictionary* (Second College Ed.; emphasis supplied). Or, "[a] succession of usually continuously numbered issues or volumes ... *with related authors or subjects and similar formats*" *Id.* "*Series* refers to *like or related things or events* arranged or occurring in order." *Id.* Thus, if one volume in a series of videos is deemed clearly pornographic, as was the case here, a reasonable and fair inference arises that other volumes in that same series are probably pornographic as well. After reviewing the volumes that were purchased prior to seizure, the average person of reasonable prudence would have little practical doubt concerning the nature and contents of the remaining videos. That is the most *probable* conclusion that a reasonable and prudent consumer would draw. Indeed, that is the conclusion a reasonable magistrate would draw. One may acknowledge the theoretical *possibilities* that the nature and content of the remaining videos could be different from those actually reviewed, but such wispy conclusions do not destroy the concrete *probabilities* created by the series format and the singularly obscene content of a random sample. To argue otherwise asks the Court to ignore the basic realities of marketing and the simple dictates of common sense in favor of a sterile, academic and wholly unrealistic approach to the probable cause issue.[3] That is not the role of a feder-

3. That is why it is inappropriate for Supreme Video to suggest that "probability theorists" be employed to determine the legal issue of proba-

ble cause. Nor is it always useful to construct hypotheticals and compare them to the facts before the magistrate. For example, Supreme Vid-

al court when reviewing a state court probable cause determination:

> Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine "philosophical concept existing in a vacuum," ..., but rather it requires a pragmatic analysis of "everyday life on which reasonable and prudent men, not legal technicians, act."

*Davis*, 458 F.2d at 821. (Citations omitted.)

 Finally, one cannot lose sight of the limited purpose of the warrant in this case. This was not a case where a warrant was used to destroy the videotapes at issue and/or to impose a prior restraint upon the viewing of First Amendment materials. Rather, the videos were seized for the limited purpose of gathering and preserving evidence and there has never been an allegation in this case that the seizure deprived anyone of an opportunity to purchase and view the videos in question. As Judge Posner stated in *Sequoia*, "[t]he slight possibility of a temporary suppression of constitutionally protected sex [materials] is not enough to invalidate the warrant under the Fourth Amendment." *Sequoia*, 725 F.2d at 1094.[4] Supreme Video has always had the option of requesting a prompt *Heller* hearing to determine whether the tapes at issue are obscene, and if not, to demand their immediate return. To the Court's knowledge, Supreme Video has never pursued this readily available remedy, perhaps because the *"probabilities"* discussed above would

prove accurate. In any event, if the seizure has not proved temporary, the fault lies with Supreme Video, not the defendants. And where the seizure is temporary and does not preclude the free exchange of the materials at issue, a theoretical *"possibility"* of seizing protected materials cannot outweigh a practical and fact-based *"probability"* that the materials at issue are obscene.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The defendants' motion for summary judgment is granted, Supreme Video's request for injunctive and/or declaratory relief is denied, and the case is dismissed.

**SO ORDERED.**

---

eo offers as argument the following hypothetical: "Suppose there were a law which made it unlawful to portray Klingons negatively. Would a Magistrate who had reviewed only Star Trek I and found that it in fact portrayed Klingons negatively have probable cause to issue a warrant directing the seizure of all movies in the Star Trek series? ... [W]hile, in the early movies of the series, Klingons were enemies of the United Federation of Planets, they later became our friends and a prediction about the portrayal of Klingons garnered from a sample of only one movie in the series would have been dead wrong as to at least some of the other movies in the series. One would have had to have reviewed a reasonable sample from the series to know how alike or different the different movies were in the area of Klingon portrayal." (Plaintiff's Brief in Opposition at 14–15.) Under such hypothetical facts, this Court would agree with Supreme Video. However, the hypothetical is inapposite, be-

cause it is too narrowly drawn. The question should not be, "What if there was a law making it unlawful to portray Klingons negatively?" The question should be, "What if there were a law making it unlawful to make movies that appealed to people's interests in aliens from outer space?" Under such a law, if a magistrate reviewed Star Trek I and found that it's unrelenting theme and content involved dealings with aliens from outer space, he would have a substantial basis to conclude that the other movies in the Star Trek series *probably* (though not necessarily) dealt with the same subject matter in the same or similar fashion.

4. And this was certainly not the type of warrant which promotes the "wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987).